435 F.2d 493
 Zels B. JOHNSON, Plaintiff-Appellant,
v.
Melvin LAIRD, Secretary of Defense, Lt. General Stanley
Resor, Commander, Department of the Army, Headquarters 6th
U.S. Army Presidio, San Francisco, California 94129, and Lt.
Col. George Abe, Headquarters 3rd Bn., 161st Infantry, Pier
91, Seattle, Washington, Defendants-Appellees.
 No. 25383.
 United States Court of Appeals, Ninth Circuit.
 Nov. 24, 1970.
 
 Robert C. Mussehl (argued), of Lind, Thom, Mussehl & Navoni, Seattle, Wash., for plaintiff-appellant.
 Charles F. Murphy (argued), Asst. Atty.Gen., Slade Gorton, Atty.Gen., Olympia, Wash., Charles A. Schaaf (argued), Asst.U.S.Atty., Stan Pitkin, U.S.Atty., Seattle, Wash., for defendants-appellees.
 Before HAMLEY and WRIGHT, Circuit Judges, and GOODWIN, District judge.*
 EUGENE A. WRIGHT, Circuit Judge:
 
 
 1
 Zels Bryan Johnson appeals the dismissal by the district court of his petition for writ of habeas corpus seeking release from the Army as a conscientious objector. We affirm.
 
 I. The Factual Background
 
 2
 Johnson began his military service in January of 1966 when he joined the Washington National Guard with a concurrent six-year commitment in the Army Reserve. After a four-month tour of active duty, he returned to his home and began serving the remainder of his military obligation by regular attendance at drills of his National Guard Unit. From the stipulated facts filed in the district court, it appears that he attended drills regularly and performed his duties without incident until November, 1968.
 
 
 3
 From November, 1968 to March, 1969, Johnson attended no drill meetings of his unit. During this period he was officially absent without leave for a total of 17 regularly scheduled drills.
 
 
 4
 In March, 1969, Johnson met with Lt. McGrath, the Assistant Adjutant of his National Guard unit. The officer informed him that he was required to counsel appellant with respect to his nonattendance at drills and to inform him that he was being recommended for active duty pursuant to Army regulations.
 
 
 5
 Johnson requested information about applying for discharge as a conscientious objector. Lt. McGrath initially stated that Johnson's delinquency necessitated his being ordered to active duty and informed him that 'the regulations had no provisions for applying for discharge as a conscientious objector under these facts.'
 
 
 6
 Johnson persisted, however, in his quest for this information and the parties have stipulated that 'Lt. McGrath made attempts to counsel plaintiff with such information.'
 
 
 7
 The record does not reveal the extent to which Johnson was informed concerning the applicable Army regulations or his responsibilities for initiating an application thereunder. In the next month, however, Johnson did nothing further about this matter and his absence from drill meetings continued.
 
 
 8
 On April 13, 1969, the Adjutant General of the Washington National Guard informed the Headquarters, Sixth Army in San Francisco, of Johnson's unsatisfactory performance and requested that active duty orders be issued. While this request was being processed by Sixth Army, Johnson resumed his efforts toward application for discharge as a conscientious objector by requesting copies of the appropriate forms from Warrant Officer Petzold of the Washington National Guard. Mr. Petzold informed Johnson that the forms (DA Form 2496) were not in stock but that he could file his application by letter. No letter was ever filed with the Guard.
 
 
 9
 On May 9, 1969, the active duty orders which the Guard had requested were issued, directing Johnson to report for active duty at Fort Lewis, Washington, on July 7, 1969.
 
 
 10
 About May 12, 1969, Johnson filed simultaneous requests on Selective Service Form 150 for recognition of his alleged status as a conscientious objector with both the National Guard and his local draft board. The response of his local draft board will be discussed in detail in Section II, infra. As to the National Guard, it is stipulated that no action was taken in response to the request.
 
 
 11
 Having received his orders to report for active duty on July 7, 1969, Johnson filed this action on July 3, 1969 in the district court. Concurrently with his complaint, Johnson filed a motion for a temporary restraining order to delay his then pending active duty orders. The record fails to reveal what action, if any, was taken with regard to the motion but it appears that no temporary relief was granted pending resolution of the issues presented in the complaint.
 
 
 12
 Despite the apparent lack of temporary relief, Johnson admittedly failed to report for active duty as ordered. Though he was officially thereafter classified as a deserter, the Army took no action to apprehend him during the pendency of the action in the district court.
 
 
 13
 The action in the district court continued with a filing of stipulated facts. Based thereon, the appellees moved for a summary judgment of dismissal. The motion was granted and the complaint dismissed on December 19, 1969. A timely notice of appeal to this court was filed thereafter.
 
 
 14
 Following the dismissal of his complaint, Johnson failed to report for active duty as ordered. In February, 1970, he was taken into custody by military police and transported to Fort Lewis, Washington.
 
 
 15
 After his apprehension by military authorities, court martial charges were filed charging that Johnson was absent without official leave from his initial reporting date of July 7, 1969, until his apprehension on February 18, 1970. After an initial postponement, the court martial proceedings were scheduled for June 30, 1970.
 
 
 16
 Prior to that date, however, Johnson absented himself without leave from Fort Lewis. He had not returned by the trial date and the trial proceeded in his absence. The military court found him guilty and imposed a sentence of ten months at hard labor, loss of all pay and privileges and a dishonorable discharge.
 
 
 17
 On September, 2, 1970, this appeal was calendared for oral argument. Counsel for Johnson then informed the court that Johnson was absent without leave and was outside of the country, in Vancouver, British Columbia. The appellees then moved to dismiss this appeal. After due consideration, we indicated that the appeal would be dismissed unless Johnson would surrender himself to the military authorities within 30 days of our order of September 29, 1970. Johnson v. Laird, 432 F.2d 77 (1970).
 
 
 18
 We are now informed that Johnson has in fact surrendered himself pursuant to that order. Appellees' motion to dismiss is therefore denied.
 
 
 19
 II. Re-Classification by the Draft Board.
 
 
 20
 Before turning to the grounds for the dismissal by the district court, it is necessary to deal with a preliminary question presented by the appeal. As noted, Johnson sent requests for recognition of his status to both the National Guard and to his local draft board.
 
 
 21
 For reasons that are not altogether clear, the draft board accepted Johnson's request for classification as a conscientious objector and granted him a personal appearance on July 21, 1969. Following that appearance, Johnson was in fact re-classified by the board. He did not, however, receive the I-O classification he had sought but rather was classified III-A (hardship). With this classification, it is quite clear that Johnson could not have been inducted into military service.
 
 
 22
 His argument now is that the Selective Service System 'assumed jurisdiction' over him and that his re-classification voids his military active duty orders which were issued not by the draft board but by Sixth Army. As will appear, we are convinced that the Selective Service System lacked jurisdiction to effect this classification and that its action has no bearing on the validity of his military active duty orders.
 
 
 23
 The confusion here can be clarified somewhat by turning first to the alternatives available to the National Guard when a member becomes delinquent in attendance or otherwise performs unsatisfactorily.
 
 
 24
 Unsatisfactory performance by a member of the National Guard can lead to any of three possible alternatives:
 
 
 25
 (1) The Guard can order the delinquent member to serve 45 days of active duty. 10 U.S.C. 270(b).
 
 
 26
 (2) He can be discharged from the Guard but remain in the Army Reserve and be ordered to report for active duty for a total of two years with credit for active duty already served. 10 U.S.C. 673(a).
 
 
 27
 (3) He can be discharged from both the Guard and the Army Reserve and reported to his local draft board for immediate priority induction by the Selective Service System. 50 U.S.C.App. 456(c)(2)(D).
 
 
 28
 The preliminary question here, therefore, is which of these alternatives was pursued. An examination of the record makes it clear that Johnson was ordered to active duty per alternative (2) above rather than having been certified for immediate priority induction per alternative (3).
 
 
 29
 One exhibit before us is a letter from Johnson's Commanding Officer to the Adjutant General of the Washington National Guard reporting the delinquency and requesting processing for a tour of active duty. In response, the Adjutant General requested active duty orders from Sixth Army. The active duty orders were ultimately issued by Sixth Army Headquarters and specifically call for an active duty tour of 18 months and 28 days which, coupled with Johnson's previous active duty for training would have constituted his two-year active duty requirement.
 
 
 30
 While it is clear that Johnson was ordered to active duty and not ordered to report for priority induction, this does not explain the action of the local board. The board was notified of Johnson's unsatisfactory performance. The initial notification was given on the same day that his active duty orders were requested. It informed the local board that he 'has been designated as an unsatisfactory participant and is being reported, this date, for order to Active Duty.' After the active duty orders had actually been issued, the local board was again notified that Johnson had been 'ordered to Active Duty as an unsatisfactory participant.'
 
 
 31
 We find no other communications from the National Guard to Johnson's local board in this record and it is quite clear that neither of these communications calls for 'immediate priority induction' under 50 U.S.C. App. 456(c)(2)(D). Prior to the receipt of these communications, Johnson was properly classified I-D as a member of a reserve unit.[1]
 
 
 32
 Following the notification of his orders to report for active duty, the local board's only responsibility was to reflect this change in status by changing his classification to I-C.[2] This limited responsibility was to exercise essentially clerical, ministerial duties. The board lacked jurisdiction to do more.[3]
 
 
 33
 We cannot determine why the local board proceeded as it did. Perhaps it misunderstood the import of the communications from the National Guard. Whatever the reason, the actions of the board have no bearing on the validity of the military active duty orders.
 
 
 34
 III. Custody and Exhaustion of Administrative Remedies.
 
 
 35
 The district court dismissed Johnson's complaint on two grounds. It ruled, first, that he was not in custody for the purpose of habeas corpus and, second, that he had failed to exhaust his administrative remedies.
 
 
 36
 The district court's restrictive view of the custody requirement for habeas corpus was once the prevalent view, particularly in military cases.[4] The more contemporary view, however, is that actual physical restraint is not necessary and that one need only show a potential restraint upon his liberty to seek habeas corpus relief.[5]
 
 
 37
 This does not mean, however, that the district court erred in dismissing this complaint because, as will follow, it is apparent to us that Johnson failed to exhaust his administrative remedies prior to seeking judicial review.
 
 
 38
 As to his administrative remedies, we note at the outset that the Army has adopted detailed regulations which set forth the practice to be followed in order to effectuate the discharge of a conscientious objector from reserve components such as the National Guard. AR 135-25 sets forth detailed instructions as to the content and processing of such applications by members of the reserve. It is, of course, not contested that the processing provisions of this regulation were not followed here.
 
 
 39
 While we do not have it before us, we shall assume that the application filed by Johnson with the National Guard on May 12, 1969, included the information called for by the regulations so that the only question is whether the Guard is required to process such an application which it received after active duty orders for the applicant had already been issued.
 
 
 40
 First, it is quite clear that the Guard would have had to take the necessary steps to cancel or delay Johnson's orders to report for active duty in order to give it the necessary time to process the application. The conscientious objector regulations call for three personal interviews as well as detailed review throughout the applicant's chain of command before his application is finally approved or disapproved.[6] It seems doubtful that the military would have had the time to process this application during the six weeks or so after it was received and Johnson was to report for active duty.
 
 
 41
 Could the Guard have cancelled or delayed Johnson's activation under these circumstances? The applicable regulations, AR 135-91, set forth the circumstances and procedures under which a reservist who has performed unsatisfactorily is to be ordered into active duty.
 
 
 42
 The regulations also prescribe the grounds under which active duty orders can be delayed. Paragraph 16(b) specifically provides that 'except for reasons of emergency or temporary illness or injury, no member will be authorized delay once his active duty orders have been published.'
 
 
 43
 We do not think that the filing of an application for discharge as a conscientious objector meets any of these criteria and conclude that the National Guard could not have delayed Johnson's activation as a result of this late application.
 
 
 44
 This does not mean that Johnson is precluded from seeking discharge from the military as a conscientious objector. Under AR 635-25, procedures almost identical to those available to reserve members are specifically provided for members of the Army on active duty who wish to apply for discharge as conscientious objectors. Having delayed his application until after his active duty orders had already been issued, we think Johnson's remedy was to report for active duty as ordered and then apply for discharge from the military.
 
 
 45
 Appellees here have placed great emphasis on the fact of Johnson's failure to attend drills as an adequate basis for refusing to process his application for discharge. In sum, their position is that the Guard has no responsibility to process the applications of its members who are not attending drills on a regular basis. We think this suggestion goes too far.
 
 
 46
 Under the facts of this case, however, we need not specifically rule as to the precise responsibilities of the National Guard in processing these types of discharge applications. We need only go so far as to hold that the military has no responsibility to process the application for discharge of a delinquent reservist who first files his application after he has already been issued orders to report for active duty.[7] To hold otherwise would be to materially disrupt the administrative processes of reserve units in effectuating the statutory alternatives provided for unsatisfactory performance of their members.
 
 
 47
 Affirmed.
 
 
 
 *
 Hon. Alfred T. Goodwin, United States District Judge, District of Oregon, sitting by designation
 
 
 [1]
 See 32 C.F.R. 1622.13
 
 
 [2]
 See 32 C.F.R. 1622.12
 
 
 [3]
 See United States v. Lonstein, 370 F.2d 318 (2d Cir. 1966)
 
 
 [4]
 See, e.g., Petition of Green, 156 F.Supp. 174, 180 (S.D.Cal.1957), appeal dismissed as moot sub nom. Green v. Secretary of Navy, 264 F.2d 63 (9th Cir. 1958)
 
 
 [5]
 See Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968); Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968). See also Developments, Federal Habeas Corpus, 83 Harv.L.Rev. 1038, 1252-59 (1970); J. Hansen, Judicial Review of In-Service Conscientious Objector Claims, 17 U.C.L.A.L.Rev. 975, 994-96 (1970)
 
 
 [6]
 See generally E. Sherman, Judicial Review of Military Determinations and the Exhaustion of Remedies Requirement, 48 Military L.Rev. 91 (1970), reprinted from 55 Va.L.Rev. 483 (1969)
 
 
 [7]
 Cf. Palmer v. United States, 401 F.2d 226 (9th Cir. 1968)