In the Matter of William Edwin RASTIN, USN, Petitioner,

v.

Hon. Melvin LAIRD, Secretary of Defense, Hon. John Chafee, Secretary of the Navy, Captain Woodrow Wilson Graham, Commanding Officer U. S. Navy Amphibious Base, Coronado, California, Respondents.

No. 70–384.

United States District Court, S. D. California.

Dec. 29, 1970.

Milton J. Silverman, San Diego, Cal., for petitioner.

Harry D. Steward, U. S. Atty., and Frederick B. Holoboff, Asst. U. S. Atty., San Diego, Cal., for respondents.

## MEMORANDUM OPINION AND ORDER

WALLACE, District Judge.

Petitioner brought this habeas corpus proceeding following a denial by the United States Navy of petitioner's request for a discharge because of his claimed status as a conscientious objector (hereinafter C.O.).

## FACTS

In an undated application addressed to Commanding Officer, Mare Island Naval Shipyard, which was filed allegedly on or about the first part of June, 1970,[1] petitioner, WILLIAM EDWIN RASTIN, requested discharge because of conscientious objection. In compliance with Department of Defense Directive 1300.6 dated May 10, 1968, (hereinafter DOD 1300.6) and BUPERSMAN 1860120 dated August 21, 1970, petitioner saw a chaplain and a psychiatrist, and was accorded an O–3 hearing.[2] Each of these interviewing officers stated in his written findings a belief that petitioner was sincere in his feelings and the chaplain and O–3 officer recommended that he be discharged from the service.

In addition to the interviews, petitioner set forth information to support his claim in a written application. As required by BUPERSMAN 1860120 par. 3b.(1), this information was assembled in paragraph form with each paragraph identified by the appropriate letter designation. In paragraph (m) wherein is required: "A description of the nature of the belief which is the basis of the applicant's claim", petitioner said:

"First of all, though my application is based on moral reasons, I do believe that human life was created by a su-

1. The application probably was filed prior to May 8, 1970, the date a request was made for a psychiatric evaluation due to his claim of being a C.O.

2. An O–3 hearing is one by an officer at least of the rank of United States Navy lieutenant. The procedure of having an interview with these three officers is provided for in DOD 1300.6, part VI.B.4.

preme being; i. e., GOD, to kill a human being is ggainst (sic) my belief that all being (sic) have the right to live a full and natural life. Why is it wrong for me to kill? Each and every person on this planet has feeling and thoughts, I *won't* censor anyone with death!"

The application and the three reports of the officers were assembled and submitted to the Chief of Naval Personnel (hereinafter C.N.P.) who disapproved the application for discharge. In a letter dated Sept. 15, 1970, the reasons given were:

"2. Your request for discharge by reason of conscientious objection was reviewed in the Bureau of Naval Personnel by an established Board which recommended that you not be discharged by reason of conscientious objection. Your application is exceptionally brief and superficial. You simply state your belief in three short sentences rather than 'describing the nature of (your) belief' which is required by DOD Directive 1300.6. The paucity of information you present does not enable the board to conclude that your claim is based on a deeply held conviction."

Following the disapproval, petitioner filed a petition in this Court seeking a temporary restraining order, which was granted, and a writ of habeas corpus. The petition alleged that the findings of the Navy were legally insufficient and were unsupported by any basis in fact gleanable from the record. It is also alleged that the findings are absolutely bereft of any supportable rational basis consistent with due process. Petitioner claimed that the Navy used an illegal standard when it denied his application on the grounds that it was brief and superficial.

### JURISDICTION

Jurisdiction of the court to hear the matter is found in 28 U.S.C. § 2241 (1959) et seq. Petitioner is in "custody", as required by this section because he is complaining that denial of his request, and the resultant retention in the United States Navy, amounts to custody. Johnson v. Laird, 435 F.2d 493, (9th Cir., 1970).

However, petitioner did not appeal the decision to the Board for Correction of Military Records. Whether petitioner has exhausted his military remedies and, therefore, established jurisdiction in this Court is open to question. Craycroft v. Ferrall, 408 F.2d 587 (9th Cir., 1969) vacated and remanded, 397 U.S. 335, 90 S.Ct. 1152, 25 L.Ed.2d 351 (1970). It may be that such an appeal is no longer necessary in the Ninth Circuit. Quinn v. Laird, 421 F.2d 840, 841, footnote 1 (9th Cir., 1970). Under the circumstances, this Court will assume jurisdiction.

### NATURE OF REMEDY

When a person, by his own free will and choice, enters into a contractual relationship with the United States of America to serve in a designated branch of the service, or is drafted into said service for a prescribed period of time, the individual, generally speaking, has no subsequent right to termination of that relationship except with the express agreement and concurrence of the Government. (DOD 1300.6, part IV.B.1.). The Government has voluntarily made provision for individuals who believe that they should receive a C.O. status because of a belief that has become firm and fixed subsequent to their entering the service. (DOD 1300.6, part IV.B.2.). A specific procedure has been outlined and prerequisite guidelines have been established by the Department of Defense and, in order for any serviceman to receive the benefits of a C.O. status, the individual must come within those guidelines and receive the permission of the Government as outlined therein.

Counsel argued that there are some additional unspecified rights of the petitioner over and above what is allowed pursuant to this directive. Obviously,

this cannot be so. The serviceman had absolutely no right to an inservice C.O. status prior to the allowance of the procedure by the Department of Defense and he, therefore, could not be granted any more rights than are outlined by the Government. In re Kanewske, 260 F. Supp. 521, 524 (N.D.Cal., 1966), appeal dismissed as moot sub nom. Kanewske v. Nitze, 383 F.2d 388 (9th Cir., 1967); Brown v. McNamara, 263 F.Supp. 686 (D.N.J., 1967), affirmed 387 F.2d 150 (1967), cert. denied, Brown v. Clifford, 390 U.S. 1005, 88 S.Ct. 1244, 20 L.Ed.2d 105 (1968). He is, of course, entitled to have this procedure administered in a manner which provides equal protection of laws to all those to whom it is open. Brown v. McNamara, *supra* at 691. However, it must always be remembered that a serviceman is committed to a set period of time in the service and the granting of C.O. status changing that period of time, or type of service which he will render, is a right that can be found only within the DOD Directive (DOD 1300.6, part IV.B.1.).

### SCOPE OF APPEAL

■■ The appeal to the Federal District Court because of dissatisfaction with the findings and opinion of the C. N.P. is limited to two areas: whether the petitioner was accorded due process and whether there is a basis in fact for the determination for denial of the application of the petitioner. As procedural due process was met in this case, the only question is whether there was a basis in fact for the denial. The scope of this review is narrowly limited and is, in fact, the narrowest known to law. Bishop v. United States, 412 F.2d 1064, 1067 (9th Cir., 1969). In effect, this Court sits in appellate review to make a determination as to whether or not there are any facts to substantiate the opinion rendered by the C.N.P. See: Dickinson v. United States, 346 U.S. 389, 396, 74 S.Ct. 152, 98 L.Ed. 132 (1953). It is clear that this Court is not to try the case *de novo*, nor to give an opinion that

this Court might render if it were called upon to determine whether or not the petitioner should be accorded a C.O. status. See: Witmer v. United States, 348 U.S. 375, 380–381, 75 S.Ct. 392, 99 L.Ed. 428 (1954).

### BURDEN OF PROOF

■ Although there is not uniformity of opinion, it would appear that the petitioner has the burden of establishing a prima facie case that he is entitled to a C.O. status and if he is able to do so, the burden of proof then shifts to the Government to find some facts in the record to support the denial of the petition. Rautenstrauch v. Secretary of Defense, 313 F.Supp. 170, 173 (W.D.Tex., 1970); Owens v. Commanding General, 307 F. Supp. 285, 287 (N.D.Cal., 1969). There is also a lack of uniformity as to what is necessary to establish a prima facie case, but for purposes of this case, it will be assumed, without holding, that the petitioner has established a prima facie case.

### TEST TO BE APPLIED

■ The question presented is whether or not there are any facts within the record showing some inference which will substantiate the decision of the C.N.P. Witmer v. United States, *supra*, 348 U.S. at 382, 75 S.Ct. 392. Obviously, the naked statement of objection, standing alone, is insufficient to substantiate a C.O. claim. The ultimate question is the sincerity of petitioner's objection to participation in war. Bishop v. United States, *supra*, 412 F.2d at 1066; United States v. Evans, 425 F.2d 302 (9th Cir., 1970). As this involves the state of mind of the petitioner, this Court must look to objective facts, *i. e.*, circumstantial evidence. Witmer v. United States, *supra*, 348 U.S. at 381, 75 S.Ct. 392. Inconsistent statements or a finding of insincerity may support the denial of a C.O. status. United States v. Haughton, 413 F.2d 736, 739 (9th Cir., 1969).

■ The action of the C.N.P. is entitled to the support of any inference of sham or insincerity on the part of the petitioner which he could have drawn, validly and fairly, from the record upon which he acted. Bishop v. United States, *supra,* 412 F.2d at 1067. This Court should "* * * search the record for some affirmative evidence to support the [C.N.P.'s] overt or *implicit* finding that [petitioner] has not painted a complete or accurate picture." Dickinson v. United States, *supra,* 346 U.S. at 396, 74 S.Ct. at 157 (emphasis supplied).

## THE DECISION OF THE C.N.P.

■ It is not necessary to hold whether or not a determination by the C.N.P. that a petition is "too brief and superficial" is an erroneous standard, and, if so, whether such a formalistic approach would dispose of the matter. See: Dissenting Opinion, United States v. Atherton, 430 F.2d 741 (9th Cir., 1970). The opinion of the C.N.P. is entitled to a presumption of regularity. *Id.* Giving that opinion a reasonable interpretation with such a presumption, the finding of superficiality and a lack of a deeply held conviction is an indication that the C.N.P. found that the claimed belief was not held sincerely by the petitioner.

## THERE ARE FACTS TO SUBSTANTIATE THE DECISION OF THE C.N.P.

In determining whether there is any basis in fact for the decision, it must be remembered that opinions rendered by the chaplains and O–3 hearing officers are merely part of the total facts presented to the C.N.P. Their opinions do not necessarily control and the C.N.P. is at liberty to come to an opposite conclusion. Speer v. Hedrick, 419 F.2d 804, 805 (9th Cir., 1969). It must also be remembered that the C.N.P. is *the* decision-making agency, not a reviewing agency. (DOD 1300.6, part VI.E.).

■ Vagueness in the description of the nature and origin of the conscientious objection claimed to be held can be considered as an objective fact by the C.N.P. Bishop v. United States, *supra* at 1069. See: United States v. Enslow, 426 F.2d 544 (9th Cir., 1970).

Among other things, the following are facts in the record which could substantiate the decision of the C.N.P.

1. Petitioner's descriptive statements could be interpreted to not show the deep motivation which ordinarily is anticipated.

2. There is an inconsistency in the record as to when he began to feel he could no longer participate in war.[3]

3. In his application, petitioner states: "I haven't been able to pinpoint an exact date as to when I started believing this way, I can only say that in the *past year or so* it has gotten stronger and stronger till I felt that it was necessary to say no." (Emphasis supplied.)

The chaplain reports that he was told by petitioner: "They are not something that have been arrived at over a short period of time, but *over several years.*" (Emphasis supplied.) (Note that by this time, petitioner had been in the Navy approximately two and one-half years and this raises a question of whether or not he had these beliefs prior to entry into the service, which would make him ineligible for relief. DOD 1300.6, part IV.B.2.)

The psychiatrist reports that: "He states he has *always* felt this way but supposes he has been making excuses for himself and his part in the service so far, and apparently rationalizing his participation in the military on the basis of his *indirect involvement* in the killing of people, but now feels he must not participate in any way at all." (Emphasis supplied.) (It is difficult to believe that at the time that he volunteered for the service that he *knew* he would be indirectly involved rather than directly involved.)

To his O–3 hearing officer, it is reported that his beliefs "* * * evolved through self study and thought over an extended period of time, *particularly the last two years.*" (Emphasis supplied.)

3. There is an inconsistency in the record as to the source of his feelings.[4]

4. The person upon whom the petitioner relies most for religious guidance in matters of conviction relating to his claim appears to be a student.[5]

5. The petitioner appears to be naive and immature; and terminated his college education on two occasions due to lack of interest prior to enlisting in the Navy.[6]

## DECISION AND ORDER

 Applying the test properly allowed by law to the record, it is obvious that there are facts which can substantiate the denial of petitioner's claim for C.O. status and, therefore, there is a basis in fact for the decision.

The petition for a writ of habeas corpus is denied and the temporary restraining order is dissolved.

It is so ordered.

4. On his application, the petitioner states that: "My beliefs come from books, friends, talking and listening, touching and feeling, loving and caring, and from the death of a life-long friend that died for his country." To the chaplain, he reported that: " * * * His beliefs are the result of his own reading, association with college friends and professors." (Note that he attended college before he entered the service.) To his O-3 hearing officer, he reported that his convictions " * * * evolved through self study and thought * * *."

5. In request for: "The name and present address of the individual upon whom the applicant relies most for religious guidance in manners of conviction relating to this claim", petitioner lists the name of an individual who later in the petition is designated as a "student and life-long friend."

6. The O-3 hearing officer found him to be "naive and immature." The history taken by the psychiatrist states that he: " * * * attended college but quit in the 1st year because of lack of interest and preference for leisure time activities. He worked for awhile and tried school again at his parent's request, but left once more and entered the Navy."