William Edwin RASTIN, USN, Petitioner-Appellant,

v.

Hon. Melvin LAIRD et al., Defendant-Appellee.

No. 71-1039.

United States Court of Appeals, Ninth Circuit.

July 23, 1971.

As Amended Aug. 23, 1971.

---

Milton J. Silverman, (argued), of Somers, Fox & Kallen, San Diego, Cal., for petitioner-appellant.

Sheldon Deutsch, Asst. U. S. Atty., (argued), Harry D. Steward, U. S. Atty., Frederick B. Holoboff, Asst. U. S. Atty., San Diego, Cal., for defendant-appellee.

Before CHAMBERS and TRASK, Circuit Judges, and REAL, District Judge.*

---

* Honorable Manuel L. Real, United States District Judge for the Central District of California, sitting by designation.

TRASK, Circuit Judge:

The United States District Court for the Southern District of California, 320 F.Supp. 1047, denied the application for habeas corpus of William Edwin Rastin, an enlisted man in the United States Navy. Rastin had filed a request for discharge as a conscientious objector stating his reasons therefor.[1] Appropriate hearings and interviews were held and the necessary reports filed. They were uniform to the effect that Rastin's beliefs were sincerely held and recommended discharge.[2] The application and recommendations of the officers were then referred to the Chief of Naval Personnel (C.N.P.) who disapproved the application upon the basis that the brevity of the asserted beliefs of the applicant did not permit the reviewing board to conclude that the applicant's affirmed conviction was deeply held.[3] The applicant brings the matter here for review.

Jurisdiction of the district court is predicated upon 28 U.S.C. § 2241. The petitioner is in "custody" within the meaning of the section when he is held contrary to a valid claim of conscientious objection. Johnson v. Laird, 435 F.2d 493, 496 (9th Cir. 1970). Jurisdiction here is pursuant to 28 U.S.C. § 2253.[4]

On appeal it is the function of the reviewing court to determine whether there was a "basis in fact" for the determination of the C.N.P. Negre v. Larsen, 418 F.2d 908, 909 (9th Cir. 1969), aff'd sub nom., Gillette v. United States, 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971). The reason given for disapproval was that the applicant's belief was stated "in three short sentences rather than 'describing the nature of (your) belief,' which is required by [Department of Defense] Directive 1300.6." We find nothing of substance in a requirement that a belief be "described" rather than "stated." The disapproval then continues by saying that the "paucity of information" does not enable the reviewing board to determine that the claim is a deeply held conviction. As the district court holds, and the government contends, this explanation appears to declare that the C.N.P. equates "deeply held" with "sincere", and that unless the belief is expounded at some length and documented, it must be found insufficient. Granted that affirmations of sincerity may be belied by inconsistent actions, writings and statements, it is doubtful if the proof of the fact may be greatly fortified by lengthy self-serving

---

1. "First of all, though my application is based on moral reasons, I do believe that human life was created by a supreme being; i. e., GOD, to kill a human being is ggainst [sic] my belief that all being [sic] have the right to live a full and natural life.

"Why is it wrong for me to kill? Each and every person on this planet has feeling and thoughts, I *won't* censor anyone with death." C.T. 7–8, Ex. A.

2. The applicant is afforded an opportunity to appear in person (with counsel if he so desires) before an officer in the grade of O–3 or higher; he is also interviewed by a chaplain who files a report with comments on the sincerity of the applicant in his belief and an opinion as to its source; and a report is filed by a psychiatrist or medical officer based upon an interview. D.O.D. 1300.6 VI 4–8. In this case the record discloses that Rastin was interviewed by a Commander, by a chaplain who was a Lt. Commander (3

occasions) and a psychiatrist who was a Lt. Commander.

3. "Your request for discharge by reason of conscientious objection was reviewed in the Bureau of Naval Personnel by an established Board which recommended that you not be discharged by reason of conscientious objection. Your application is exceptionally brief and superficial. You simply state your belief in three short sentences rather than 'describing the nature of (your) belief' which is required by D.O.D. Directive 1300.6. The paucity of information you present does not enable the board to conclude that your claim is based on a deeply held conviction." (C.T. 14.)

4. Exhaustion of military judicial remedies is not required under the current Justice Department position as to in-service conscientious objector cases. Quinn v. Laird, 421 F.2d 840 (9th Cir. 1970). Exhaustion of administrative remedies in such cases is still required. Johnson v. Laird, 435 F.2d 493 (9th Cir. 1970).

statements which may be only copy-book declarations. A history of consistent actions, of course, may support the written declarations. Some were set out in other answers contained in the application.[5]

█ The unanimity of corroboration of sincerity and deeply held conviction contained in the separate written reports of the O–3 officers plus the lack of negative and contra-indicated actions, writings or statements supports the view that whatever "paucity of information" was presented was consistent with the application. We have reviewed the facts set out by the district court in support of C.N.P. disapproval. They were not mentioned in the C.N.P. order. We do not find them to be persuasive. They are as follows:

"1. Petitioner's descriptive statements could be interpreted to not show the deep motivation which ordinarily is anticipated." C.T. 41.

They also "could be" interpreted to show deep motivation. That three naval officers after personal interviews *did* so interpret them in the O–3 proceedings lends strong credence to this point of view. There is no finding of conduct or expression which actually does indicate the contrary.

"2. There is an inconsistency in the record as to when he began to feel he could no longer participate in war." C.T. 41.

█ The court's footnote documents the statement by pointing to the uncertainty in point of time at which the feelings of conscientious objection materialized. Again, so long as they developed during his period of service (and his statements do not show the contrary), the exact *time* at which they fully developed do not prove a lack of sincerity or deep conviction.

"3. There is an inconsistency in the record as to the source of his feelings." C.T. 41.

The explanation for this asserted inconsistency is explained by reference to the applicant's statement on his application that: "My beliefs come from books, friends, talking and listening  *  *  * and from the death of a life-long friend that died for his country." The trial court suggests that this is inconsistent with his statement to the chaplain to whom he stated that "His beliefs are the result of his own reading, association with college friends and professors." And is likewise inconsistent with his statements to the hearing officer to whom he reported that his convictions "evolved through self study and thought *  *  * ."

█ We fail to find any such basic inconsistency which would bespeak a contra-indication of sincerity and deep conviction. This is particularly true when we remember that the statements of the chaplain and the hearing officer do not purport to be quotes but rather their own summarization of the interview.

"4. The person upon whom the petitioner relies most for religious guidance in matters of conviction relating to his claim appears to be a student." C.T. 41.

█ Again, "a student and life-long friend" could as well be the person upon whom the petitioner relies most for religious guidance, as an ordained minister. There is no suggestion in the record that this statement is untrue or unworthy of belief.

"5. The petitioner appears to be naive and immature; and terminated his college education on two occasions due to lack of interest prior to enlisting in the Navy." C.T. 41.

█ None of these facts appears to us to be necessarily inconsistent with a deep conviction or lack of sincerity. A person may be both naive and immature and still be very sincere and hold deep convictions. These may change upon attaining maturity and sophistication, or

---

5. Activity as a member of church youth groups when a Junior and Senior in High School and attendance at church camps and conferences.

they may not. Likewise, a lack of interest in college cannot be said to contradict a sincerity of feeling and belief.

■ If the record is to be examined, this court should also note the statements of the chaplain after his "three extensive interviews" with applicant. He reports that Rastin's conviction on armed conflict "is a general conviction, against all use of force, not just a certain war or action."[6] If the issue of discharge from the armed services is to be determined on the basis of sincerity and deep convictions under Section 6(j),[7] it appears that greater weight should be given to the O-3 hearing and interviews than to a formal written statement be it brief or extended. Sincerity and convictions projected in interviews and the hearing before officers experienced in psychiatry, religion and the armed services, as well as experienced in dealing with men, may not be easily contrived. The officers are concerned not only with a formal written application but with the man himself seated before them and face to face dialogue. If there be dissembling, they are best able to discover it. The specific written answer which the government and the C.N.P. refer to, is succinct. Supplemented by the other answers and the interviews, we deem it sufficient.

We therefore conclude that the decision of the district court should be reversed and the case remanded so that the Navy may grant a discharge pursuant to the applicable regulations of the Department of Defense. In the event the discharge is not granted within thirty days from the filing of the mandate, the writ should issue forthwith.

The Clerk is directed to issue the mandate forthwith.

6. The chaplain's letter after the interviews is dated July 22, 1970, long prior to Gillette v. United States, 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168 (decided March 8, 1971) holding that opposition to participation in a particular war does not comply with Section 6(j) of the Military Selective Service Act of 1967.

7. "That section exempts from military service all those whose consciences, spurred by deeply held moral, ethical, or religious beliefs, would give them no rest or peace if they allowed themselves to become a part of an instrument of war." Welsh v. United States, 398 U.S. 333, 334, 90 S.Ct. 1792, 1798, 26 L.Ed.2d 308 (1970).