Lieutenant John A. STRAIT, Petitioner-Appellant,

v.

Melvin R. LAIRD, Secretary of Defense, et al., Respondents-Appellees.

No. 26289.

United States Court of Appeals, Ninth Circuit.

July 13, 1972.

Jameson, District Judge, concurred and filed opinion.

John T. Hansen (argued), San Francisco, Cal., Richard Silver, of Heisler & Stewart, Carmel, Cal., for petitioner-appellant.

Richard F. Locke, Asst. U. S. Atty. (argued), James L. Browning, Jr., U. S. Atty., San Francisco, Cal., for respondents-appellees.

Before MERRILL and KOELSCH, Circuit Judges, and JAMESON * District Judge.

MERRILL, Circuit Judge:

By these proceedings in habeas corpus appellant seeks judicial review of an administrative decision of the Department of the Army denying his request for discharge as a conscientious objector. This appeal is taken from judgment of the District Court for the Northern District of California denying, on the merits, the relief sought. A cross-appeal has been taken by appellees from that portion of the District Court's judgment holding that it had jurisdiction in habeas corpus.

On June 4, 1971, this court, on rehearing, withdrew its earlier opinion in

---

* Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

which we had held that appellant was entitled to discharge. We held on rehearing that under Schlanger v. Seamans, 401 U.S. 487, 91 S.Ct. 995, 28 L. Ed.2d 251 (1971), the District Court for the Northern District of California was without habeas corpus jurisdiction. Strait v. Laird, 445 F.2d 843 (9th Cir. 1971). On May 22, 1972, the Supreme Court reversed us, holding that jurisdiction existed and remanded the case to us for decision on the merits of appellant's claim. Strait v. Laird, 406 U.S. 341, 92 S.Ct. 1693, 32 L.Ed.2d 141 (May 22, 1972). Accordingly we revert to our original opinion on the merits.

Appellant is an officer in the United States Army Reserve. He received his commission in 1966 on completion of the ROTC course at the University of California at Davis. He was then placed on a delayed reserve status in order to permit him to attend law school at Yale University. Upon graduation from law school, and after being permitted to take the bar examination, he was, in July 1969, ordered to report to Fort Gordon, Georgia, on February 9, 1970, to commence two years active duty as an Army officer. The reporting date was later changed to April 13, 1970.

On January 20, 1970, appellant applied for discharge as a conscientious objector. Pursuant to Army regulations respecting reserve officers the application was submitted to the United States Army Reserve Components Personnel Center at Fort Benjamin Harrison, Indiana. Processing of the application by interviews and hearing was had at Fort Ord, California, and the record was then forwarded to Fort Benjamin Harrison for review by the Conscientious Objector Discharge Review Board. On that Board's recommendation the application for discharge was disapproved by the commander of the Reserve Components Personnel Center. This action followed.

In the processing of appellant's application for discharge at Fort Ord, appellant was first interviewed by an Army psychiatrist who found "no signs of psychiatric disease." He was then interviewed by an Army chaplain who reported: "I believe that he is sincere in indicating that his religious beliefs preclude participation in war in any form. I believe that his convictions are primarily religious in basis and origin."

Appellant was then given a hearing by an Army captain as hearing officer. The hearing was thorough, consuming approximately three hours. The report of this officer discussed appellant's concept of a Supreme Being and of the nature of religion and his views respecting violence and war. The report concluded: "Based upon Lieutenant Strait's stated beliefs and the sincerity with which he appeared to hold these beliefs, it is my determination that Lieutenant Strait's beliefs fall within a *very liberal* interpretation of the case of United States v. Seeger, [380 U.S. 163,] 85 S. Ct. 850, [13 L.Ed.2d 733] (1965)." Further, "it is my opinion that Lieutenant Strait's beliefs are sincerely held."

At Fort Benjamin Harrison appellant's record was first reviewed by a lieutenant colonel, chief of the Delayed Officer Management Division, acting in the capacity of appellant's immediate commander. His report recommended disapproval, citing appellant's political activities and concluding that the chaplain and the hearing officer "erred or were misled in their determination that [his] beliefs were religious in origin."

The Review Board then acted and, with three members out of fifteen participating, recommended disapproval for these reasons:

1. That appellant's beliefs were not truly held.

2. That they were not religiously founded but reflected political, sociological and philosophical views and a personal moral code.

3. That appellant's objections to war were confined to this particular war.

We have carefully reviewed the record and conclude that the findings of the Review Board are wholly without basis in fact.

The greater part of the Board's memorandum is devoted to the proposition that appellant's views were not religiously founded. This, appellees concede, was error, since appellant's views meet the standards announced in Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970), handed down after the Board had taken its action.

■ There is no support for the Board's finding that appellant's objections to war were limited to Vietnam. The application makes clear the scope of his objections to violence and to war in general. The fact that his political action and expressions of protest were directed against the one war in which this country was engaged is not inconsistent with his avowed beliefs. It indicates no more than that there was a limited area in which action in support of his beliefs was called for.

The sole remaining basis for rejection of the application was the Board's finding that appellant's views were not truly held. In this, acting upon the cold record and without benefit of interview or opportunity for rebuttal of its findings by appellant (which opportunity Army regulations appear to regard as due), it rejected the findings of those who had interviewed appellant to the effect that his views were sincerely entertained.

Two reasons were given by the Board. It stated that this was the first case of conscientious objection that the hearing officer had reviewed. This was simple error. The officer had had substantial past experience in this respect.

■ The sole remaining reason for finding lack of sincerity (and the reason on which appellees now rely as establish-

ing basis in fact) was appellant's delay in applying for discharge after crystallization of his beliefs, which the hearing officer had found to have occurred in his second year of law school. The Board emphasized that there were earlier opportunities—occasions on which, if objections did exist, one would have expected them to be expressed: (1) Appellant in 1968 requested an extension of delay status to permit him to take a bar examination and qualify for judge advocate general commission (which commission he later refused); (2) in 1969 a certificate of medical fitness was provided by him; (3) in 1969 he was promoted to the rank of first lieutenant.

The Board apparently felt that appellant had not adequately explained his delay in expressing his views. It concluded that he was nothing more than "an educated skillful opportunist who had used his military status for every shred of protection it could offer and then, when called to active duty, attempted to gain relief from his obligation under the guise of a conscientious objector claim."

But the reasons for appellant's delay were explicitly set forth in his application and in a manner wholly consistent with the existence of conscientious objection.[1] He states that he recognized that he had placed himself "in an untenable position in relation to the Army * * *. The last year of my life has been a stormy period of soul searching and agonizing, trying to reconcile my beliefs and conscience with my contract with the Army." It was the suicide of his cousin (also a conscientious objector) in November of 1969 that ultimately "broke the emotional bind I was in and freed me to assert my beliefs."

We do not find it implausible that one with conscientious scruples [2] should find

---

1. The "opportunist" aspect disappears when it is recognized (as counsel for appellees concedes) that the "protection" enjoyed by appellant was no greater than the Selective Service regulations then applicable would have afforded through student deferments.

2. That appellant's conscience manifested itself in areas other than objection to war

is abundantly established. Among other activities he worked for the United States Commission on Civil Rights in Alabama and in the southwest; he participated in a project engaged in reviewing arrest records and interviewing blacks who had been arrested; he served as an observer of the first attempts of the blacks in Mississippi to organize politically.

it difficult casually to dismiss his obligations to the Army. Rather we regard it as wholly consistent with conscientious objection that the enlisted soldier should strive to find some means of reconciling a conflict between conscience and duty in such a fashion that both might be respected and to postpone repudiation of the claims of duty until it becomes clear that their demands make reconciliation impossible.

Accordingly we find the explanation given by appellant for delay in asserting his claim to be reasonable and credible unless some basis for rejecting it otherwise appears from the record. We have searched in vain for such basis.

We conclude, then, that no basis of fact exists for rejection of appellant's claim and that he is entitled to his discharge.

Appellant in his application for discharge expressed his consent to perform postmilitary work of the nature encompassed by the civilian work program administered by the Selective Service System. His hearing officer, in recommending discharge, recommended that he be required to perform such work. In our view such a condition of discharge would be proper under the circumstances.

Accordingly the matter is remanded with instructions that the Army be allowed a reasonable time within which to grant discharge to appellant pursuant to Army regulations applicable to conscientious objectors; failing which, discharge (subject to an order to perform appropriate civilian work) shall be granted by the District Court.

JAMESON, District Judge (concurring):

I agree with Judge Merrill that there is no basis in fact for rejecting appellant's claim as a conscientious objector on the ground of insincerity. It is clear from the record that appellant was a sincere conscientious objector when he applied for discharge on January 20, 1970 and for at least two years prior thereto. This conclusion, however, should not be construed as justifying or condoning appellant's conduct in accepting the benefits of his reserve commission without disclosing his conscientious objector beliefs until he was called for active duty.

The Board could properly find that the imminence of active duty was the immediate cause of appellant's application for discharge.[1] This court, as appellee argues, has held in a number of cases that the Board may consider "suddenness of conversion", particularly after receipt of an order to report for active duty, in determining whether conscientious objector beliefs are sincerely held.[2] These cases, however, were decided prior to Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970) and are distinguishable with respect to the religious test to be applied. In most of them there was additional ev-

---

1. On August 20, 1968, appellant requested that his delay status be continued until January 1, 1970 to permit him to take the California bar examination and qualify for a Judge Advocate General commission. On February 15, 1969 he returned a Certification of Medical Fitness indicating that he was physically qualified for military service. On June 7, 1969 he was promoted to first lieutenant and apparently accepted without comment. On July 9, 1969, after declining an appointment in the Judge Advocate General Corps, he was notified that he was scheduled to report for active duty on February 9, 1970 (later amended to April 13, 1970). On October 1, 1969 he again requested rescheduling of his active duty commencement date. On January 20, 1970 he submitted his application for discharge as a conscientious objector. At no time prior thereto had he asserted his conscientious objector beliefs.

2. See e. g. Maynard v. United States, 9 Cir., 409 F.2d 505 cert. denied 396 U.S. 834, 90 S.Ct. 91, 24 L.Ed.2d 85 (1969); Bishop v. United States, 9 Cir., 412 F. 2d 1064 (1969); Negre v. Larsen, 9 Cir., 418 F.2d 908 affirmed Gillette v. United States, 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168, rehearing denied 402 U.S. 934, 91 S.Ct. 1521, 28 L.Ed.2d 869 (1969); and Speer v. Hedrick, 9 Cir., 419 F.2d 804 (1969).

idence to support a finding of insincerity.

By reason of appellant's failure to assert his conscientious objector beliefs until called for active duty, a close question is presented.[3] From a review of all the evidence I conclude that this fact alone is not sufficient to support a finding that applicant's conscientious objector beliefs were not truly and sincerely held.[4]

3. The obvious feeling of the Board that appellant should have submitted an application for discharge at an earlier date is understandable. It is true, as the Board's decision indicates, that appellant was willing to accept any benefits of his status as a reserve officer until he was required to report for active duty. On the other hand, there was no legal obligation to submit an earlier application, and his own explanation, as set forth in Judge Merrill's opinion, is credible, even though different inferences may also properly be drawn.

4. In fact, it is difficult to see how appellant could have entered active duty without making an application for discharge in the light of his beliefs and activities as set forth in detail in the record.