**First Lieutenant Stephen H. LaFRAN-CHI, Petitioner-Appellant,**

v.

**Honorable Robert C. SEAMANS, Jr., Secretary of the Air Force, et al., Respondents-Appellees.**

**No. 73–1242.**

United States Court of Appeals, Ninth Circuit.

April 19, 1976.

Richard P. Fox, Los Angeles, Cal. (argued), for petitioner-appellant.

John E. Nordin, Asst. U. S. Atty., Los Angeles, Cal. (argued), for respondents-appellees.

## OPINION

Before BROWNING, TRASK and GOODWIN, Circuit Judges.

PER CURIAM.

Appellant LaFranchi, a pediatrician, was commissioned a First Lieutenant in the Air Force. He sought to resign his commission because of conscientious objection to war. He was interviewed by an Air Force chaplain, an Air Force psychiatrist, and an investigating officer at Norton Air Force Base, California. All recommended approval of his application. His file was reviewed by the Acting Staff Judge Advocate and the Deputy Director, Directorate of Personnel, at the Air Reserve Personnel Center in Denver. They also recommended approval.

Appellant's file was then forwarded to the Air Force Military Personnel Center; several officers there advised disapproval. Upon recommendation of the Air Force Personnel Board, the Secretary of the Air Force rejected appellant's application, stating, "The record fails to substantiate that [appellant's] views are founded on religious training and belief or that his convictions are sincerely and deeply held."

The officers recommending disapproval relied on two facts: (1) since appellant was a pediatrician, there was no apparent conflict between his professed views and the duties to which he would be assigned; and (2) his application was filed shortly after he received his active duty orders.

■ The two facts relied upon were insufficient. Appellant expressed opposition to any form of military service. As he said in concluding the statement of his views in his application, "I strongly feel that my beliefs and objectives as a person and as a physician are in direct contradiction to the beliefs and objectives of the military and therefore, I cannot in good conscience serve the military." The fact that appellant's assignment would not involve him directly in combat operations is irrelevant to appellant's professed conscientious objection to any form of military service under the governing test. *See, e. g., Gillette v. United States,* 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971); *Welsh v. United States,* 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970); *Witmer v. United States,* 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955). It was therefore improper to deny appellant a discharge on that ground. The timing of appellant's application, while relevant, will not alone sustain the result. This court has repeatedly held that late crystallization of conscientious objector beliefs, standing alone, is not a sufficient ground for denying a discharge. *Sanger v. Seamans,* 507 F.2d 814, 817 (9th Cir. 1974); *Richmond v. Larson,* 476 F.2d 1038, 1042 (9th Cir. 1973); *Strait v. Laird,* 464 F.2d 205, 207–08 (9th Cir. 1972).

■ Each officer who personally interviewed appellant recommended approval of his application. We have often noted the advantage such interviewing officers have in evaluating the sincerity of a professed conscientious objector. *See Strait v. Laird, supra,* 464 F.2d at 207; *Rastin v. Laird,* 445 F.2d 645, 649 (9th Cir. 1971). Since there are no "indications that the officers may have overlooked salient facts," their recom-

mendations were entitled to "serious consideration." *Sanger v. Seamans, supra,* 507 F.2d at 817.

■ Since appellant made out a prima facie case in support of his application, and no basis in fact for denying the application was stated by the Secretary or clearly revealed by the record, the order denying the petition for habeas corpus must be reversed.

TRASK, Circuit Judge (dissenting):

I would affirm the district court's finding that "the record discloses that there was a reasonable basis in fact for the Secretary's denial of the petitioner's application for discharge as a conscientious objector, and that the petitioner was afforded procedural due process . . . ." The principles and standards for granting or denying a conscientious objector claim have been reviewed many times, most recently by this court in *Sanger v. Seamans,* 507 F.2d 814 (9th Cir. 1974). The legal question is whether or not there was a basis in fact for finding that appellant's views were not sincerely held. *United States v. Haughton,* 413 F.2d 736, 738–39 (9th Cir. 1969).

Both the Secretary of the Air Force, who is the final military decision maker, and the district court have the responsibility to take the entire record into consideration. Thus, they are not bound by the views of the interviewing officers nor of those in the chain of command who review the applicant's entire record and forward their recommendation. *Sanger v. Seamans, supra* at 817. Here, the Secretary stated that "on the recommendation of the Air Force Personnel Board" he declined to classify appellant as a conscientious objector. He also considered the record and concluded that "[y]our record fails to substantiate that your views are founded on religious training or that your convictions are sincerely and deeply held." Thus, the Secretary relied not only upon the recommendation of the Air Force Personnel Board but also upon his own independent review of appellant's record and found it to be insufficient

to support this claim. I briefly consider that record anew for the purpose of documenting my reasons, factual and legal, for agreeing with the Secretary and the district court.

There is no constitutional right to be relieved of military service as a conscientious objector. *Gillette v. United States,* 401 U.S. 437, 461 n. 23, 91 S.Ct. 828, 842, 28 L.Ed.2d 168, 187 (1971). It is a privilege accorded by Congress[1] and implemented by Air Force Regulation.[2] The same requirements must be met to be accorded conscientious objector status whether the applicant is proceeding through the induction process or is already in the service. *Gillette v. United States, supra* at 442, 91 S.Ct. at 832, 28 L.Ed.2d at 176. The majority assumes, and I agree, that the same standards apply to one who is an officer in the Medical Reserve.

The standards for qualification are three: the applicant must be opposed to war in any form, *Clay v. United States,* 403 U.S. 698, 700, 91 S.Ct. 2068, 2070, 29 L.Ed.2d 810, 813 (1971); his opposition must be based upon religious training and belief, *United States v. Seeger,* 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965); *Welsh v. United States,* 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970); and his views in these respects must be sincerely held, *Witmer v. United States,* 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955).

Moreover, it has frequently been pointed out that the scope of judicial review of the selective service process is the narrowest known to the law. *Ames v. Laird,* 450 F.2d 314, 315 (9th Cir. 1971). *See also Witmer v. United States,* 348 U.S. 375, 380–81, 75 S.Ct. 392, 395, 99 L.Ed. 428, 433 (1955); *Estep v. United States,* 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946). In *Estep,* the Court said:

"The provision making the decisions of the local boards 'final' means to us that Congress chose not to give administrative action under this Act the customary scope of judicial review which obtains under

---

1. Military Selective Service Act of 1967, § 6(j), 50 U.S.C. App. § 456(j).

2. AFR 35–24, 32 C.F.R. § 888e (1972).

other statutes. It means that the courts are not to weigh the evidence to determine whether the classification made by the local boards was justified. The decisions of the local boards made in conformity with the regulations are final even though they may be erroneous. The question of jurisdiction of the local board is reached only if there is no basis in fact for the classification which it gave the registrant. See *Goff v. United States*, 4 Cir., 135 F.2d 610, 612." 327 U.S. at 122–23, 66 S.Ct. at 427, 90 L.Ed. at 573 (Footnote omitted).

On September 28, 1969, appellant had completed four years of medical school at the medical school of the University of California at Los Angeles and was a pediatric intern and resident at the UCLA Hospital, Department of Pediatrics. At that time, he planned three more years of study and preparation in his speciality. He was faced, however, with the possibility of induction into the Armed Services by way of the Selective Service System. Fortunately for appellant, the Department of Defense had by then developed a program for 1969 medical school graduates to defer their military obligation while they completed their internship and residency. The plan was known as the Armed Forces Physicians' Residency Program or, popularly the "Berry Plan." Those who were accepted under the plan received a commission as an officer in the military medical service, became insulated from the draft, completed their residency and as a quid pro quo agreed to perform two years of active medical duty in the military forces.

On September 28, 1969, appellant, who was then over 26 years of age, submitted an application for appointment as a medical reserve officer in the Air Force. In that application, he expressly declared himself not to be a conscientious objector and stated that he would be available for active duty in July 1972. On November 26, 1969, he accepted an appointment as a First Lieutenant, Air Force Reserves, which was tendered pursuant to his application.

Appellant completed his internship at UCLA Hospital and then completed his residency in pediatrics there in June 1972. By letter dated September 1, 1971, appellant was furnished an active duty kit and was notified that he could anticipate a call to active duty during the July-October 1972 period. He answered on October 14, 1971, providing the information requested and stating his geographical assignment preferences. In that response, appellant wrote, "I will have 6 months of pediatric subspecialty training in Pediatric Endocrinology by July 1972 . . . and if possible, I would appreciate an assignment at a military hospital associated with a medical school where I can continue to pursue an interest in Endocrinology."

Appellant's active duty orders were issued on March 20, 1972. He was assigned to the United States Air Force Hospital, Luke Air Force Base, Glendale, Arizona, effective July 20, 1972. On February 24, 1972, appellant engaged counsel to initiate proceedings to obtain his discharge as a conscientious objector. Counsel formally notified Headquarters Air Reserve Personnel Center, (ARPC), Denver, Colorado, by letter dated April 10, 1972, attaching a copy of Dr. LaFranchi's resignation. As pointed out by the majority, the three interviewing officers recommended approval. The file was then reviewed by the Acting Staff Judge Advocate and the Deputy Director, Directorate of Personnel at the Air Reserve Personnel Center in Denver, who also recommended approval.

When forwarded to the Air Force Military Personnel Center, disapproval was recommended by several officers. By legal review dated October 13, 1972, Brigadier General Frank O. House, Director of Civil Law, Office of the Judge Advocate General recommended disapproval, stating that "[I]t is our opinion the applicant has not met the burden of establishing:

"(a) his opposition is founded on religious training and belief, and

"(b) his conviction is sincere and deeply held."

By letter dated November 9, 1972, appellant was notified on behalf of the Secretary of the Air Force that his claim to be a conscientious objector had been denied and his resignation had been refused.

"Your record fails to substantiate that your views are founded on religious training and belief or that your convictions are sincerely and deeply held."

It is clear that the coincidence of a late filing with an active duty assignment may be considered as one of the objective facts which casts doubt upon the sincerity of an applicant for conscientious objector status. *Christensen v. Franklin*, 456 F.2d 1277, 1278 (9th Cir. 1972); *Speer v. Hedrick*, 419 F.2d 804–05 (9th Cir. 1969). Here, there was more. The personnel board's report pointed out that as early as 1969, appellant stated he was unsure of his beliefs about his military obligation. Yet even then, he sought the advantages of the Berry Plan and accepted them to obtain three years deferment, an opportunity to complete his internship and residency and to obtain a commission as a first lieutenant. The Secretary may well have concluded that this stratagem was based not upon sincerity, but upon pure expediency.

The personnel board also pointed out that in this statement of his views appellant emphasized that in hospital work in 1968 he was exposed to two badly burned Vietnamese children, which engendered strong feelings of "compassion and anger" about war. This, he wrote, raised doubts about his willingness to serve. Yet, he took advantage of the Berry Plan a year later with no mention of conscientious objections. In order to obtain the Berry Plan advantages he even made a written statement that he was not a conscientious objector. It appears clear to me that there was a basis in fact for the personnel board, the legal review board and the Secretary to find a lack of sincerity and a plethora of sharp-eyed expediency.

There is even more. In his written dissertation on the evils of war, appellant used many words to express his abhorrence to war in any form and his opposition to violence. He concluded that his "personal beliefs and objectives as a person and as a physician are in direct opposition to the beliefs and objectives of the military." In response, Colonel Woolf, Chief, Medical Career Division, Office of the Surgeon, observed that there was no such conflict between the goals appellant expressed and the duties to which the Air Force would assign him. "He is a fully trained pediatrician and will be involved full time, in the medical care of children." (Certified Administrative Record.)

In sum, I find much "basis in fact" in the record which fully supports the Secretary and the trial court.

Appellant also contends that he was denied procedural due process because he was not afforded an opportunity to reply to the reports of the officers in the chain of command to their superiors. The argument is not well taken in my view. Paragraph 13 AFR 35–24, 32 C.F.R. § 888e.28, provides that:

"Any additional information other than the official service record of the applicant considered by the Secretary of the Air Force or HQ USAF which is adverse to the applicant, and which the applicant has not had an opportunity to comment upon or refute, will be made a part of the record and the applicant will be given a 15-day opportunity from date of receipt of the additional information to comment upon or refute the material before a final decision is made."

It appears clear that this refers to factual information from outside sources. The reports to which petitioner refers are reports of senior officers based upon their analysis of the record petitioner himself has submitted. No new factual information is involved and no denial of procedural due process has taken place.

I would affirm.