**Jeffrey M. ARON, Petitioner,**

v.

**Melvin S. LAIRD, Secretary of Defense, et al., Respondents.**

**No. 960 Civil.**

United States District Court,
E. D. North Carolina,
New Bern Division.

April 20, 1973.

William J. Morgan, of Ellis, Hooper, Warlick, Waters & Morgan, Jacksonville, N. C., for petitioner.

Thomas P. McNamara, U. S. Atty., by Malcolm J. Howard, Asst. U. S. Atty., Raleigh, N. C., for respondents.

## MEMORANDUM OPINION AND ORDER

LARKINS, District Judge:

This action is a petition for a Writ of Habeas Corpus brought by a physician who is presently a Lieutenant Commander in the United States Navy stationed at Camp Lejeune, North Carolina.

Petitioner graduated from the University of California, Irvine College of Medicine, in June, 1967. He did his internship at Mount Zion Hospital in San Francisco during 1967 and 1968 where he signed up for the Armed Forces Physician's Appointment and Residency Program (Berry Plan) and was commissioned as a Lieutenant JG. Two weeks later he became a Lieutenant. On August 18, 1971 he was promoted to Lieutenant Commander in the Medical Corps of the United States Navy. On April 12, 1972 Petitioner received orders to report on active duty later in 1972. He then filed an application for discharge as a conscientious objector on June 10, 1972. His request was denied, such denial being final on November 8, 1972, whereupon the instant action was brought.

In Lieutenant Commander Aron's application for discharge he based his decision to apply for conscientious objector status on his deeply felt concern for the ultimate sanctity of every human life. His beliefs developed over a long and confusing course. Throughout his life he had been opposed to any form of war or violence, but he did not apply for conscientious objector status at an earlier date because of his belief in his country and the American system of government and because it was more expedient to join the Berry Plan. Only when his active duty orders arrived did he realize that he could no longer rationalize his actions, and by applying for conscientious objector status he would finally be aligning his beliefs with his life.

Dr. Aron stated that his Judaic upbringing and personal moral code taught him that life was sacred, and it would not be ethical for him to participate in destruction of any kind, even in the most indirect manner. His feelings had developed over a period of years and finally crystallized the past year and a half as a result of his close relationships with his wife and his natural father's wife. He asserted that he was conscientiously opposed to war in any form, that his opposition was based upon religious training and belief and his own personal moral code, and that his objection, although only recently crystallized, was sincere. In his application, Dr. Aron expressed his willingness to perform work under the Selective Service civilian work program.

Prior to the consideration of his application for discharge, the Petitioner was interviewed by a Navy psychiatrist, a Navy Chaplain, and submitted 20 letters of recommendation, all of which attested to his sincerity.

In his report the psychiatrist stated, "Dr. Aron has arrived at a decision of conscience. Judgment is mature and legally unimpaired." The Petitioner was also found to be without mental disorder, and it was determined that he understood that as a conscientious objector he would be required to perform duty under the civilian work program.

The Chaplain's function was to determine the depth and sincerity of the Petitioner's religious training and beliefs. He concluded that Petitioner's objection to military service gradually developed over a period of years. The factors most involved in shaping his thinking were his Hebrew school training, the influence of his father's present wife who has Dr. Aron's highest respect, the attitude of Petitioner's wife toward the military, and the normal maturation of his thinking in regard to the purpose of life and the crystallization of his moral values. The Chaplain's personal observa-

tions and feelings about this case were outlined as follows:

"a. This officer seems to be both mature and sincere in his beliefs.

b. These beliefs stem primarily from his Jewish faith and training, and from his own humanistic thinking.

c. He is opposed to all war as a means of settling international disputes, and feels that he cannot be involved even in the non-combatant capacity of a medical doctor.

d. It is my feeling that there is little to be gained by forcing this man into service against his conscience, and that on the basis of his present beliefs the granting of Conscientious Objector status would be justified."

The Petitioner was granted a hearing on July 28, 1972. The recommendations of the hearing officer did not question Dr. Aron's sincerity but his application was denied because his views had not crystallized in a timely fashion and he could be of invaluable service to the Navy. The decision of this hearing officer was striken for procedural mistakes and a lack of depth.

A second hearing was held before Commander E. M. Fulton, Jr. in Norfolk, Virginia on October 11, 1972. Commander Fulton concluded that:

"LCDR Aron has strong feelings of opposition to war and that such feelings have strengthened within the last one and a half or two years. . . . It is significant to note from the record that at every crucial point where a decision had to be made concerning his participation in the Naval Reserve that LCDR Aron was able to compromise his beliefs and continue to serve. Although in 1966 LCDR Aron believed that it was absurd to participate in a system which attempted to save alcoholics and at the same time sent men into life permanently maimed as a result of war, he nevertheless signed up for the Berry Plan

in 1967 or 1968. Shortly thereafter, he accepted a commission as lieutenant (junior grade) and about two weeks later became a lieutenant. He fully understood that he was merely postponing his military service, but he thought he could serve as a physician. Neither at the time he signed up for the plan nor at the times he accepted his commissions . . . did he make known to anyone in authority that he had reservations of conscience about serving in the military. He signed up for the Berry Plan as a pure expediency and because he was lazy. When he accepted his commission as a lieutenant commander he did not notify anyone in authority of any reservations of conscience. Lastly, he obeyed his orders for active duty and reported to Camp Lejeune. In his own words, 'I am doing it this way because I am not a bomb throwing radical.' It is interesting to note that his anti-war beliefs are not so strong as to preclude him from accepting military pay or functioning as a doctor at Camp Lejeune. Although he stated, 'Once the case is over, I don't plan to serve at Camp Lejeune,' I doubt that he would risk court-martial prosecution.

3. Apparently, LCDR Aron holds intense beliefs but they have not imposed upon him a duty of conscience which would preclude him from participating in the military system. The sources of his beliefs are both religious and a result of his own personal moral and ethical code. For example, he states that the Jewish religion does not oppose defensive war. However, he is opposed to war in all forms. He cannot participate in the Navy as a doctor because he considers that he would then be a part of a machine which has as 'an end result death.'

4. It is significant that LCDR Aron has gotten his personal and financial affairs into an exceedingly critical condition. Although he was under orders to report to Camp Lejeune, he

moved his pregnant wife to San Francisco in September and established a residence there. He also accepted employment at the Kaiser Foundation Hospital in Oakland, California. He was due to report for work on September 15, and now the date has been changed to 1 November. He signed a years lease on an apartment, bought furniture, and painted and wallpapered. He apparently was extremely confident that he would not be required to serve in the military, but he does not appear to be that confident now.

5. It is extremely difficult to accurately measure the depth of LCDR Aron's beliefs. The fact that he is away from his wife and has a significant financial obligation in San Francisco, places him in an especially difficult situation. He admittedly needs the money which he earns as a doctor while working for the Navy. His pattern of compromise is well established and his religious, moral, and ethical beliefs have consistently taken second place to material and financial advantages.

6. After considering the entire record, it is recommended that the application for classification as a 1–O conscientious objector be denied. Although his opposition to war is honest, the crucial decisions in his life are apparently based more on considerations of politics, pragmatism and expediency than on his conscience."

The Bureau of Naval Personnel affirmed Commander Fulton's denial of Petitioner's application. The Board stated that Dr. Aron's application was untimely in that it appeared from letters that his beliefs had developed earlier in his life. The Board felt this inconsistency could have been remedied by earlier application for conscientious objector status.

## CONCLUSIONS OF LAW

■ The scope of judicial review in a case of this nature is sharply limited to determining whether there was a basis in fact for finding that the Petitioner was not a conscientious objector. United States ex rel. Brooks v. Clifford, 409 F.2d 700 (4th Cir. 1969). It should be pointed out that the standards for measuring claims of in-service objectors are the same as the tests applicable in a pre-induction situation. See Gillette v. United States, 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971).

■ In order to qualify for classification as a conscientious objector, an applicant must satisfy three basic tests. He must show that he is opposed to war in any form, that this opposition is based upon religious training and belief, and that his objection is conscientious and sincere. See Clay v. United States, 403 U.S. 698, 91 S.Ct. 2068, 29 L.Ed.2d 810 (1971).

In the instant case there is no doubt that the Petitioner is conscientiously opposed to war in any form and that his opposition is based upon religious training and belief, and it therefore appears to this Court that the only basis for the rejection of Petitioner's application was that his objection was not sincere. The hearing officer stated, "LCDR Aron has strong feelings of opposition to war" and "the sources of his beliefs are both religious and a result of his own personal moral and ethical code." He concluded, "although his opposition to war is honest, . . . the . . . decisions in his life are apparently based more on . . . expediency than on his conscience." In fact the Government's brief states, "the Navy hearing officer and the Bureau of Naval Personnel based their denial of Aron's request for conscientious objector status on his apparent lack of sincerity."

■ Since the only issue is whether there was a basis in fact for the finding that the Petitioner is not sincere in his opposition to war, this Court feels that the Petitioner has established a prima facie case, and the Respondent must come forward with valid reasons for the denial of the claimant's application and

facts to support the reasons. Mere speculation as to insincerity is insufficient. See Alley v. Ryan, 319 F.Supp. 981 (E. D.N.C.1970).

It is not the duty of this Court to make an independent determination of whether Petitioner is truly a conscientious objector. A hearing was held and counsel for both sides questioned the Petitioner only so the Court could better outline the issues at bar and clarify vague points in the record. Therefore, this Court will consider the hearing officer's recommendations and the Naval Board's affirmance to see if there is a basis in fact to support their findings.

Commander Fulton denied Petitioner's application for discharge because he felt that although the Petitioner held intense beliefs, those beliefs had not imposed upon him a duty of conscience which would preclude him from participating in the military system and that the crucial decisions in Petitioner's life were apparently based more on considerations of politics, pragmatism, and expediency than on his conscience. As previously stated, these were conclusions of insincerity and must be supported by substantial evidence. In support of these conclusions Commander Fulton found (1) that at every crucial point where a decision had to be made concerning his participation in the Naval Reserve, LCDR Aron was able to compromise his beliefs and continue to serve; (2) that LCDR Aron did not make known to anyone in authority that he had reservations of conscience about serving in the military; (3) that his personal and financial affairs were in a critical condition; and (4) that his moral and ethical beliefs took second place to material and financial advantages.

■ At first glance it appears that Commander Fulton's conclusions provide a basis in fact for denying the Petitioner's application and that such basis is supported by substantial evidence. However, after considering the entire record and scrutinizing the grounds upon which the conclusions are based, it appears to this Court that there is no substance to the alleged inconsistencies and that the denial of the Petitioner's application was without any basis in fact.

Of primary concern to the Court is the fact that the hearing officer concluded in his report denying discharge that Dr. Aron's opposition to war was honest and that the sources of his beliefs were both religious and a result of his own personal moral and ethical codes. In the instant case it would seem that if the first two criteria of the three-prong test of Clay v. United States, supra, are satisfied, the third criterion of sincerity would necessarily follow. How the hearing officer can find that Dr. Aron's opposition to war was honest and that his opposition was honestly based on religious and personal moral codes and then say he was not really sincere is an absurdity.

■ All of the tangible evidence in the record points to Dr. Aron's sincerity. The letters of recommendation do not show, as the Naval Board would have us believe, that Petitioner's views developed early in his life so that his application is untimely. This Court finds that the letters show that the Petitioner is a sensitive, sincere, and humanistic individual who has always opposed war and violence. The fact the Petitioner did not earlier think of himself as a true conscientious objector despite his opposition to war and violence should not detract from the later crystallization of his views. Looking at the entire record, this Court finds a consistency between the letters of recommendation, Dr. Aron's statements in his application, and Dr. Aron's answers to the questions of the hearing officer. Also, the Chaplain's report lauded the maturity and sincerity of the Petitioner and concluded that the granting of conscientious objector status would be justified. It appears that the hearing officer did not even consider this recommendation.

In fact, the only basis of possible insincerity would be the untimeliness of

Petitioner's application for discharge, and this is of no consequence if the applicant's opposition to war has crystallized.

Tressan v. Laird, 454 F.2d 761 (9th Cir. 1972) is closely on point. Here a Navy doctor who participated in the Berry Plan applied for conscientious objector status upon receiving orders to Viet Nam. It was held that LCDR Tressan's failure to earlier voice his objections was no ground to deny his application when he fully and explicitly explained the reasons for the late crystallization of his views. The fact he received orders to Viet Nam would tend to make his sincerity more suspect than that of LCDR Aron in the instant case.

The Fourth Circuit holds that the fact an applicant delays the assertion of his claim until after his views had been formulated and that did not occur until after his military service had begun is no ground to deny him discharge if his views are sincerely held. United States ex rel. Brooks v. Clifford, supra, 409 F. 2d at 707.

In light of the above, it is the conclusion of this Court that there was no basis in fact to support Commander Fulton's finding of insincerity when he did find as a fact that Petitioner's opposition to war was honest and that his opposition was based on religious and personal moral codes.

However, assuming Commander Fulton did make the above findings and still could conclude the Petitioner was not sincere, this Court feels the grounds supporting that conclusion are lacking in substance. The hearing officer is not at liberty to merely disbelieve the claimant. There must be hard, provable, reliable facts that provide a basis for disbelief. Helwick v. Laird, 438 F.2d 959 (5th Cir. 1971).

Commander Fulton stated that at every crucial point where a decision had to be made concerning his participation in the Navy, Petitioner was able to compromise his beliefs and continue to serve. The Commander thus held that because the Petitioner signed up for the Berry Plan, accepted his commission, allowed himself to be promoted, lawfully obeyed his orders to report for duty, adequately functioned as a doctor at Camp Lejeune, and accepted pay for his services he was insincere. Petitioner stated that he had thought he could serve his country as a physician and it was not until he received his orders to report that his views crystallized and he filed his application for discharge so that he might align his life with his beliefs. Petitioner was thus penalized for late crystallization of his beliefs, for desiring to serve his country as a physician, for working within the system rather than attacking it, for obeying orders, for functioning as a doctor, and for receiving pay to support himself, his wife, and his child.

The United States is a militarily oriented society. Each physician has been subject to the draft upon completion of medical school unless he is in some reserve plan. A young doctor desiring to specialize must enroll in such a plan so that his entry will be deferred until his specialization is completed. In the instant case Petitioner's views had not yet crystallized, and the more expedient course was to sign up for the Berry Plan. This Court does not feel he should be penalized for doing so. If anything, it was a coerced expediency, the choice being between being drafted and specialization, and the choice being made by a young man desiring to specialize and hoping to serve his country as a physician.

Commander Fulton also thought that Petitioner's failure to make known his beliefs at an earlier time was evidence of insincerity. Again, this goes to the timeliness of crystallization. The Commander failed to note that when active military training became imminent the Petitioner spoke up. He did not remain in high school ROTC and did not continue in mandatory ROTC in college after the second year. After filing his application for discharge and reporting for duty, he refused to sign the Code of

Conduct and was relieved of drill at Camp Lejeune at his own request. This Court feels this all points to a sincere individual who is trying to work within our system of government. To say he should have refused induction and faced prosecution or refused to perform his duty and faced court martial to prove his sincerity is absurd, yet this is what Commander Fulton feels should have been done.

The hearing officer surmised that Dr. Aron was insincere because he had gotten his personal and financial affairs into critical condition. First of all, at the time of his application his affairs were in order. He accepted a tentative position in California and moved his family there because he assumed his case would be decided prior to his entry date. Only because the first hearing officer was tardy in submitting his findings (which were found to be deficient) was the Petitioner not sure of his status at the time he reported for duty.

Finally, the hearing officer concluded that Petitioner's moral and ethical beliefs took second place to material and financial advantages. Again, this goes to the timeliness of crystallization. The hearing officer neglected to mention that the Petitioner worked for the Community Organization for Drug Abuse Control in Phoenix to help Chicanos rather than working in the more lucrative emergency rooms of hospitals. In fact, by applying for discharge and submitting for civilian work, the Petitioner will probably earn less than he does now and certainly will lose military benefits and privileges.

This Court feels that neither the hearing officer nor the Navy Board have supplied hard, provable, reliable facts to provide a basis for disbelieving the Petitioner. Both reports indicate that the filing of his application for discharge after receiving his orders to report for active duty is clear evidence of Petitioner's insincerity. All other evidence in support thereof is mere conjecture or subjective. A finding of insincerity must be predicated upon *objective* evidence affording a rational basis to disbelieve the applicant's claims. See Warren v. Laird, 353 F.Supp. 730 (S.D. N.Y.1972).

The hearing officer's conclusion is not supported by the record unless this Court were to hold that no one who applies for conscientious objector status after signing up for the Berry Plan and receiving orders to report for active duty can be deemed sincere. This the Court will not hold. Surely one does not have to be an activist in order to be a conscientious objector. Indeed, this Court feels it is consistent with sincerity for an officer to try to find some way to reconcile the demands of duty with the demands of conscience so that both might be respected and that he would postpone repudiation of his military duty until it became clear that reconciliation would be impossible.

Therefore, it is the conclusion of this Court that there was no basis in fact for the finding that the Petitioner's decisions in his life are based more on considerations of politics, pragmatism and expediency than on his conscience. And therefore there was no basis in fact for the determinations of the hearing officer and the Navy Board that the Petitioner was not a conscientious objector. It is the Court's responsibility and obligation to cause the writ of habeas corpus to issue.

The Petitioner has expressed his willingness to perform duty under the civilian work program, and this Court will so order.

Now therefore, in accordance with the foregoing, it is

Ordered, that the Petition for a Writ of Habeas Corpus be, and the same is, hereby allowed, and

Further ordered, that the Petitioner be discharged from the United States Navy and be required to perform duty in the civilian work program administered by the Selective Service pursuant to applicable law and regulations.