**Lewis CHAMOY, Petitioner,**

**v.**

**James R. SCHLESINGER, Secretary of Defense, et al., Respondents.**

**Civ. No. 73-3933.**

United States District Court,
D. Hawaii.

Feb. 11, 1974.

William S. Hunt, Brook Hart, Hart, Sherwood, Leavitt, Blanchfield & Hall, Honolulu, Hawaii, for petitioner.

Warren H. Higa, Asst. U. S. Atty., Harold M. Fong, U. S. Atty., Honolulu, Hawaii, for respondents.

· DECISION and ORDER

SAMUEL P. KING, District Judge.

Having exhausted all his administrative remedies, the Petitioner in this case seeks a Writ of Habeas Corpus, ordering the Respondents to discharge him from the United States Air Force as a conscientious objector. Federal jurisdiction exists under the First and Fifth Amendments to the United States Constitution and under 28 U.S.C. §§ 2241 to 2243 (1971), and 28 U.S.C. § 1651 (1966).

*Facts:*

In 1968, Petitioner, a physician, entered the United States Air Force as a commissioned officer pursuant to the Berry Plan, a special program for potential doctors which allows them to complete their medical training before beginning active duty for two years. In his Berry Plan application, Petitioner, certified that he was not a conscientious objector. On August 20, 1972, Dr. Chamoy advised the Air Force that he would be available for active duty on September 1, 1973. In February, 1973, pursuant to applicable Air Force rules and regulations, Petitioner filed a conscientious objector application which included letters from various individuals testifying to his good character, introspective temperament, and pacifistic upbringing. Dr. Chamoy was then extensively interviewed by an Air Force psychiatrist, three Air Force Chaplains, and one Air Force officer appointed as the case's "Investigating Officer."[1] All

---

· 1. Pursuant to Air Force Regulation 35-24, paras. 10-13, Oct. 18, 1971, an Investigating Officer is appointed to conduct an informal hearing on the conscientious objection claim. After the hearing, he is to file a written report containing his conclusions as to the un-

these interviewers unequivocally found Dr. Chamoy sincere and recommended his discharge as a conscientious objector. Petitioner's application plus the conclusions and recommendations of the five interviewing officers were reviewed *ex parte* by higher Air Force authorities, including *inter alia* the Staff Judge Advocate and the Director of Personnel Actions, all of whom advised disapproval of the Petitioner's application. The Secretary of the Air Force subsequently denied the Petitioner's request for discharge.

Under the Air Force rules and regulations here pertinent,[2] Dr. Chamoy had to show himself a) to be sincere in his objection to participation of any kind in war in any form; and b) to have had a crystallization of his conscientious objector beliefs only after enlistment. The Respondents claim that Dr. Chamoy is not sufficiently sincere and has had no post-enlistment crystallization of beliefs.[3]

Respondents argue that insufficient sincerity is shown by the facts that 1) Petitioner voluntarily enlisted in the Berry Plan in spite of his supposed pacifistic tendencies; and 2) he manifested his conscientious objector beliefs only as active duty confronted him, five years after enlistment, and seven months after indicating an assignment preference. To support the conclusion that no post-enlistment crystallization of beliefs occurred, the Air Force apparently relied upon the record of Dr. Chamoy's pre-enlistment pacifism and the fact that he has not evinced a post-enlistment change in life style suggesting a change of beliefs. At least one Officer was influenced by Petitioner's statement that he enlisted because " . . . I did not know that I could [file for conscientious objector status]. Only later, after much discussion, did I learn that this alternative was open to me."

*Legal Issue:*

The underlying legal issue raised by this case: is whether there is any basis in fact for the Respondents' denial of Petitioner's conscientious objector appli-

derlying basis of the applicant's conscientious objection and the sincerity of the applicant's beliefs, including his reason for such conclusions. He is also to make recommendations for disposition of the case. The investigating officer's conclusions and recommended disposition is based on the entire record and not merely on the evidence produced at the hearings.
A final decision is made by the Secretary of the Air Force.

2. *See* Air Force Regulation 35–24(C1), paras. 5(a)(3) and 4(a)(2)(a), Dec. 13, 1971. The pertinent part of paragraph 5(a)(3) states:

a. Consistent with the national policy to recognize the claims of bona fide conscientious objectors in the military service, an application for classification as a conscientious objector may be approved (subject to the limitations of paragraph 4a) for any individual:

(3) Whose position is sincere and deeply held.
The pertinent part of paragraph 4(a)(2)(a) states:

a. Administrative discharge prior to the completion of an obligated term of service is discretionary with the Secretary of the Air Force, based on a judgment of the facts and circumstances in the case. However, insofar as may be consistent with the effectiveness and efficiency of the Air Force, a request for classification as a conscientious objector and relief from or restriction of military duties in consequence thereof will be approved to the extent practicable and equitable within the following limitations:

(2) Nothing contained in this regulation renders ineligible for classification as a conscientious objector a member of the Air Force who possessed conscientious objector beliefs before entering military service if:
(a) Such beliefs crystalized after receipt of an induction notice; . . . .

3. Actually, the notice of denial to Dr. Chamoy stated: "It has been determined that your actions are inconsistent with your alleged beliefs, and cast considerable doubt on the depth and sincerity of your claim of conscientious objection." However, the record as a whole indicates that the alleged failure to show a post-enlistment crystallization of beliefs was another reason for the Air Force's denial.

cation. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946); Speer v. Hedrick, 419 F.2d 804 (9th Cir. 1969). More specifically, did the Air Force have any basis in fact to find Dr. Chamoy insufficiently sincere, or lacking a post-enlistment crystallization of beliefs?

*Decision*:

■ With full awareness that the judicial review of military determinations is "the narrowest known to the law," Negre v. Larsen, 418 F.2d 908, 909, *aff'd sub nom.* Gillette v. United States, 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971), this court finds that the Air Force had no basis in fact for denying the Petitioner a conscientious objector discharge.

■ Assessing the sincerity of an alleged conscientious objector and determining when his beliefs crystallized is primarily a subjective inquiry into a man's mind. Personal contact and the resulting demeanor evidence is critical to that end, and it is most significant in this case that everyone having personal contact with Dr. Chamoy found him sincere and recommended discharge. In these circumstances, this court, and other courts, have tended to rule in the petitioner's favor. *See e. g.,* Miller v. Chafee, 462 F.2d 335 (9th Cir. 1972); Tellez v. Chaffee, 467 F.2d 218 (9th Cir. 1972); Kinnell v. Warner, 356 F.Supp. 779 (D.C.Hawaii 1972); Kopprasch v. Laird, Civil No. 72–3650 (D.C. Hawaii Oct. 17, 1972).

Aron v. Laird, 358 F.Supp. 1170 (E.D.N.C.1973) is a case almost exactly on point, except that in *Aron,* the petitioner's case was weaker than Dr. Chamoy's. In *Aron,* the petitioner, who enlisted pursuant to the Berry Plan, professed himself to be opposed to all war throughout his life, but filed for a conscientious objector discharge only when he received active duty orders because previously he had believed in "the American system of government and because it had been more expedient to join the Berry Plan" (at 1171). Two interviewing officers recommended discharge; however, the hearing officer recommended denial. Higher authorities on an *ex parte* review affirmed the hearing officer's denial. Noting that "Mere speculation as to insincerity is insufficient," and that all the tangible evidence in the record supported Dr. Aron's claim (at 1174), the court granted petitioner's request for discharge.

In this case, all the tangible evidence, including letters submitted on Petitioner's behalf, Petitioner's own statements, the Investigating Officer's written report, and all the demeanor evidence available to the interviewing chaplains and psychiatrist support Dr. Chamoy's claim.

The Air Force's grounds for its finding of insincerity are all, at best, speculative. To reason that insufficient sincerity exists because Dr. Chamoy enlisted in the Berry Plan while having some longtime pacifistic leanings suggests that enlistment and some aversion to war are inherently inconsistent. Such reasoning tends to establish the principle that those with conscientious objector tendencies prior to enlistment can never be adjudged sincere enough for an in-service conscientious objector discharge. The other objections to Dr. Chamoy's sincerity are based upon the assumption that crystallization of beliefs only when confronted with active duty five years after enlistment and seven months after indicating an assignment preference may be adjudged a sham. The Ninth Circuit has consistently rejected lateness in filing a conscientious objector claim as a basis in fact for denying the application. Tressan v. Laird, 454 F.2d 761 (9th Cir. 1973) (filing for conscientious objector status when orders to Vietnam received); Ludwig v. Moore, Civil No. 73–1858 (9th Cir. Nov. 6, 1973) (while holding against the Petitioner, the court recognized that ". . . his conscientious objection may not have 'crystallized' until literally confronted with active military service."); *See also* Morrison v. Larsen, 446

F.2d 250 (9th Cir. 1971); Aron v. Laird, *supra*.

The Air Force supports a finding that Petitioner has not had a post-enlistment crystallization of beliefs on the grounds that his life style has not changed since enlistment. The record indicates that Dr. Chamoy's life style has always been that of a quiet, dedicated, and religious physician who has done, and intends to continue doing *pro bono* work. How he could have changed such conduct and remained within the bounds of permissible military life so as to indicate a sudden crystallization of conscientious objector beliefs is difficult to imagine. Moreover, Petitioner's reasons for not claiming conscientious objection status prior to enlistment are irreproachable. Since his beliefs had not crystallized at that time, he was unaware that a conscientious objector deferment might be available to him; and only after much post-enlistment discussion could he envision conscientious objection as an alternative.[4]

Balanced against the Air Force's contrary speculations, Dr. Chamoy indicates that his post-enlistment beliefs were crystallized by his discussions with vari-

ous veterans of the medical corps, and by his life with his wife and child since 1968.[5] These explanations of post-enlistment crystallization are similar to those which this court found sufficient in Kopprasch v. Laird, *supra*. *See also* Morrison v. Larsen, *supra*, at 255, (". . . beliefs supporting a C.O. claim will change significantly over a period of time as the result of reading, dialogue with others, continued introspection, and the influence of life's experiences.").

It is sometimes a difficult task to distinguish between a conscientious objector and an unscrupulous opportunist; but when all those personally confronting the applicant support his claim and the only contrary arguments are speculations as to his state of mind, the court must find that no basis in fact exists for the denial of Petitioner's conscientious objector claim.[6]

The Writ of Habeas Corpus will be granted, and Dr. Chamoy will be released from the custody of the United States Air Force.

Let judgment enter accordingly.

---

4. In his written statement to the Air Force, the Petitioner made the following remarks:

At the time I was commissioned I did not fully comprehend that a physician in the military is directly and indirectly participating in the war effort and by his participation supporting it. . . .

. . . I was opposed to war but my beliefs as a CO had not yet crystallized at the time [of enrollment in the Berry Plan].

There is nothing in the record to rebut Dr. Chamoy's remarks.

5. In his written statement to the Air Force, Dr. Chamoy indicated the following:

At the time of my commission none of my colleagues had been in the armed forces but in the past five years many have served and I have learned what the position and duties of a physician in the armed forces is. I have learned that he di-

rectly contributes to the war effort in many ways, physically and morally . . . . My marriage and child have made me even more aware of the frailties of humans and the need to love and have compassion for one another.

There is nothing in the record to rebut these remarks.

6. The Respondents assert that Ludwig v. Moore, *supra*, is on point. However, that case is easily distinguishable from the one at hand. In *Ludwig*, the court ruled against the petitioner when the hearing officer found that *Ludwig* held his conscientious objector beliefs prior to enlistment and the petitioner himself offered no explanation for his post-enlistment change of beliefs. In this case, the Investigating Officer recommended discharge, and Dr. Chamoy has offered explanations for his post-enlistment change of beliefs.