In the Matter of Lieutenant Commander
Elliott R. TRESSAN, MC, USNR,
715355/2105, Petitioner-Appellant,

v.

Hon. Melvin LAIRD, Secretary of Defense, et al., Respondents-Appellees.

No. 71-1779.

United States Court of Appeals,
Ninth Circuit.

Jan. 25, 1972.

Charles R. Khoury, Jr. (argued), San Diego, Cal., for petitioner-appellant.

Before BROWNING and HUFSTEDLER, Circuit Judges, and FERGUSON,* District Judge.

PER CURIAM:

Lieutenant Commander Tressan's application for discharge from the service by reason of conscientious objection was denied by the Chief of Naval Personnel ("CNP"). Tressan filed a petition for a writ of habeas corpus. He appeals from an order of the district court denying his petition.

After Tressan had completed his medical internship in 1967, he accepted a commission as a Lieutenant in the Naval Reserve Medical Corps. He participated in the Armed Forces Physician's Appointment and Residency Program and he completed a three-year residency in psychiatry. On July 19, 1970, he began a two-week course at the Field Medical Service School, Camp Pendleton, California, during which time he received training in weapons, weapon firing, and firing tactics. In November 1970, he was notified that he was to report for

---

* Honorable Warren J. Ferguson, United States District Judge for the Central District of California, sitting by designation.

duty with a division assigned to Viet Nam. The division was withdrawn from Viet Nam shortly thereafter and stationed at Camp Pendleton. Tressan began preparing his conscientious objector application in November. He described in detail the history and development of his conscientious objections. He narrated his religious training, some of his family experiences, his increasing conflict over his duty and his conviction against all killing (particularly arising during his treatment of severely injured military personnel and during his training in weaponry), and finally the resolution of the conflict by filing his application. He volunteered for the kind of work encompassed by the civilian work program of the Selective Service System. Many letters from military associates, long-standing friends, his Rabbi, and the Chaplain who interviewed him were filed in support of his application. The various letters corroborated his narration. All of the writers expressed the view that Tressan was deeply committed to his conscientious convictions. None of the statements by anyone who interviewed him expressed a contrary view.

The CNP, who did not interview him, denied his application. The CNP's letter recites Tressan's military service, refers to Tressan's letter in which he mentioned the experience of his immigrant father during World War I, and states:

"Under the circumstances, your claim to sudden crystallization of your beliefs at this point in your life is not acceptable. Your contention that your conscience suddenly will give you no peace if you are required to function as a doctor in the naval service does not appear reasonable in view of your earlier acceptance of military routine and duties without expression of bar of performance by reason of conscience. . . .

" . . .

"The facts in your case indicate that your application is not the direct result of deeply felt moral, ethical, or religious prohibition against war in any form, but more aptly is a negative response to an undesirable assignment. Accordingly, your request for discharge is denied."

■ Tressan made out a prima facie case for conscientious objector status. Despite the CNP's verbal circumlocutions, we agree with the district court that the CNP's ground for denying the claim was his determination that Tressan was insincere. However, we disagree with the district court's conclusion that there was a basis in fact for the CNP's decision. Our review of the record convinces us that there was none.

The basis for the decision were the following facts recited by the CNP: (1) Tressan had accepted a commission and the benefits of a military medical residency; (2) he had taken weaponry training at Camp Pendleton; (3) he treated sick and injured military personnel without objection; (4) he was well educated; (5) his father had told him about the horrors he had experienced in World War I; and (6) he had received orders to report to Viet Nam.

■ The CNP's conclusion that Tressan's claim was "unacceptable" and "not reasonable" rests on Tressan's failure earlier to voice his objections. Tressan fully and explicitly explained the reasons for the late crystallization of his beliefs. The CNP's description of Tressan's conscientious objections as "sudden" is not supported by anything in the record. To the contrary, the file reveals a prolonged effort on Tressan's part to reconcile his increasing pangs of conscience with his concepts of the demands of military duty. The lateness of crystallization under these circumstances is not an indicium of insincerity. (Cf. Rastin v. Laird (9th Cir.1971) 445 F.2d 645.) His conclusion that Tressan's application "was not the direct result of deeply felt" convictions, but "more aptly is a negative response to an undesirable assignment," is not supported by the record unless we were to hold that no one who applies for conscientious objector status after receiving orders to combat can be

deemed sincere, and therefore, a finding of insincerity can be based on that fact alone. We decline to so hold.[1] Indeed, we think that it is consistent with sincerity that an officer would try to find some way to reconcile the demands of duty with the demands of conscience in such a fashion that both might be respected and that he would postpone repudiation of his military duty until it became clear that its demands made reconciliation impossible.

The order is reversed and the cause is remanded with instructions that the Navy be allowed a reasonable time within which to grant discharge to Tressan pursuant to naval regulations applicable to conscientious objectors, failing which (subject to an order to perform appropriate civilian work) the writ shall be granted by the district court.

1. Where a call to active duty coincides with an instant conversion and where there is some other factor casting doubt on the good faith of the applicant, we have upheld a finding of insincerity. (*E. g.*, Speer v. Hedrick (9th Cir. 1969) 419 F.2d 804.)