William Bates COLE, Jr., Petitioner-Appellant,

v.

William T. CLEMENTS, Jr., et al., Respondents-Appellees.

No. 73–1724.

United States Court of Appeals, Tenth Circuit.

Submitted on Briefs Feb. 2, 1974.

Decided March 6, 1974.

Rehearing Denied May 13, 1974.

W. Robert Montgomery and Willard B. Hardesty, Lakewood, Colo., for petitioner-appellant.

James L. Treece, U. S. Atty. (Lt. Col. Wayne E. Robinson, Office of Staff Judge Advocate, Lowry AFB, Colo., of counsel), for respondents-appellees.

Before LEWIS, Chief Judge, and SETH and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

Airman First Class William Bates Cole, Jr., assigned to Lowry Air Force Base, Denver, Colorado, made application for discharge as a conscientious objector from the Regular United States Air Force. This application was ultimately denied by the Air Force, whereupon Cole instituted habeas corpus proceedings in the United States District Court for the District of Colorado. The named respondents filed their answer to Cole's petition, and the matter was then tried upon the record as thus made. At the conclusion of the hearing on this matter, the trial court found that the procedure followed by the Air Force met the requirements of Air Force regulation 35–24 and that Cole had accordingly been afforded due process. Additionally, the trial court found from the record before it that there was a basis in fact for the denial of Cole's application and accordingly denied the petition. Cole now appeals. We affirm.

Before considering the applicable Air Force regulations, reference should first be made to the chronology of proceedings. Cole enlisted in the Regular Air Force on June 21, 1972, for a period of four years' active duty. Upon completion of his basic training at Lackland Air Force Base, Cole was transferred on August 16, 1972, to Lowry Air Force Base at Denver, Colorado, for training as a bomb-navigation systems mechanic. On or about January 23, 1973, Cole formally submitted his application for discharge as a conscientious objector. In connection with his application for discharge, Cole was interviewed and evaluated by a chaplain, a psychiatrist and a hearings or investigative officer, each of whom made a written report which was made a part of Cole's official file. The chaplain, incidentally, believed Cole to be sincere in his beliefs; the psychiatrist recommended that "serious consideration" be given Cole's application; and the investigative officer thought Cole to be sincere and recommended approval of his application for discharge.

It was at this point that the file as thus made was given Cole in accord with the provisions of regulation 35–24, paragraph 11f. That particular paragraph provides that a copy of the record shall be given the applicant and further provides that the applicant may submit a rebuttal to any and all material in the file, including the investigative officer's report. Cole responded in writing that he did not desire to file a rebuttal.

Thereafter, Cole's commanding officer, a Captain Farrell, also recommended approval of Cole's application for discharge. As has been above indicated, up to this time Cole's application appeared to be proceeding quite smoothly, from his standpoint at least. From that point on, however, matters took a turn for the worse.

It was at this juncture that the matter, pursuant to regulation 35–24, paragraph 12, was referred to the Staff Judge Advocate at Lowry Air Force Base for review. The Staff Judge Advocate reviewed the file as thus made, taking no "new" evidence of any kind, and made a recommendation that the application be denied. The basis of this recommendation was in essence that Cole had failed to sustain his burden of proving that his application for discharge as a conscientious objector was founded on deeply and sincerely held beliefs. The foregoing was but the gist of the recommendation, which was detailed in considerable particularity.

The Staff Judge Advocate's recommendation, along with Cole's file, was then forwarded to the Commander of the Lowry Technical Training Center. Cole, however, was not given a copy of the negative recommendation made by the Staff Judge Advocate, and counsel argues here, as he did in the trial court, that the failure to give Cole a copy of the recommendation of the Staff Judge Advocate denied him an opportunity to file a rebuttal thereto, and was not in compliance with the provisions of regulation 35–24, paragraph 13.

Without going into further detail, the Commander of the Lowry Technical Training Center recommended disapproval of Cole's application. Thereafter, Cole's application proceeded upward in the chain of command with several additional recommendations of disapproval, until the application was finally and formally denied by the Air Force HQ. This petition for habeas corpus then followed the final denial of Cole's application.

In this court, Cole presents essentially two questions: (1) Was Cole entitled, under the provisions of regulation 35–24, paragraph 13, to receive a copy of the negative recommendation of the Staff Judge Advocate and to have fifteen days thereafter to comment on or refute such recommendation, and did such failure of the Air Force to comply with the regulation constitute a violation of procedural due process; and (2) is there a basis in fact for the denial of the application for discharge? In our view, there was compliance with the regulations here involved, and there was a basis in fact for the denial of Cole's application for discharge. It is on these grounds that we affirm.

Paragraph 11f of regulation 35–24 provides that the investigating officer's report and recommendation, along with the individual's application, all interviews with chaplains or doctors, and any other item submitted by the applicant in support of his case shall constitute the "record" and that a copy of this record shall be furnished the applicant at the time the record is forwarded to the commander who had appointed the investigating officer. Under the provisions of this particular paragraph, the applicant then has fifteen days within which to submit a "rebuttal" to such report. As indicated, Cole was furnished such report, and in connection therewith indicated that he did not desire to file a rebuttal. So, there was full compliance with paragraph 11f.

Paragraph 12 goes on to provide that fifteen days after a copy of the aforesaid report has been furnished the applicant, or upon receipt of his rebuttal thereto, whichever is sooner, the record is to be forwarded to the local Staff Judge Advocate for legal review and that when the record is complete it will in turn be forwarded to the commander who appointed the investigating officer. Following through, then, the commander in turn forwards the record with his recommendation, and reasons, "through each level in the chain of command," with recommendations being attached "at each level."

Paragraph 13 is the particular paragraph with which we are here concerned and it reads in its entirety as follows:

13. Action at Decision Level. A final decision based on the entire record will be made by the Secretary of the Air Force (officers) and HQ USAF (airmen). Any additional information other than the official service record of the applicant considered by the Secretary of the Air Force or HQ USAF which is adverse to the applicant, and which the applicant has not had an opportunity to comment upon or refute, will be made a part of the record and the applicant will be given a 15 day opportunity from date of receipt of the additional information to comment upon or refute the material before a final decision is made. The reasons for an adverse decision will be made a part of the record and will be provided to the individual.

In ruling that the Air Force had complied with its regulations, and more particularly paragraph 13, the trial court made the following pertinent comment:

The petitioner's argument of the first issue is that under the dictates of Air Force Regulation 35–24, paragraph 13, he is to be given an opportunity to rebut all reports and recommendations included in the conscientious objector file. The government argues that the regulation is not to be construed so broadly and that the Air Force has properly interpreted and complied with the regulation by giving the airman an opportunity to

examine and comment on all factual material in the file. The factual input was complete when given to the petitioner. The controversy centers on the subsequent adverse recommendations added by the command level reviewers. The relevant part of the regulation reads "Any additional *information . . .* which is adverse to the applicant . . . ." The last sentence of the regulation provides "The reasons for an adverse decision will be made a part of the record and will be provided to the individual." This difference in semantics demonstrates that the choice of terms is not accidental. *Information* is certainly different from *reasons*, and therefore the Court finds that the petitioner should be and was afforded an opportunity to rebut any *factual matter* in the file but does not have the right to comment on and rebut the reasoning giving rise to each conclusion made at various levels of command. The Court finds that the Air Force has complied with its own regulations in processing the applicant's file; that these regulations comport with due process and that therefore the requirements for due process have been met. In re Kanewshe [Kanewske] 260 F.Supp. 521, 524 (N.D.Calif.1966); Minasian v. Eagle, 292 F.Supp. 543 (C.D.Calif. 1967) aff'd. 400 F.2d 137 (9th Cir. 1967). (Emphasis by the trial court).

We generally agree with the trial court's analysis of this matter. In our view, Gonzales v. United States, 348 U.S. 407, 75 S.Ct. 409, 99 L.Ed. 467 (1955), and Crotty v. Kelly, 443 F.2d 214 (1st Cir. 1971), relied on by counsel, are not really in point. *Gonzales* was concerned with the failure to give the would-be conscientious objector a copy of a report and recommendation made by an investigative body charged with checking into and generally making an investigation of the entire matter. In *Gonzales*, the Supreme Court held that the particular military regulations there under consideration implicitly required that the registrant be supplied with "adverse evidence" and the adverse recommendation based thereon. So, *Gonzales* was concerned with an investigative report and recommendation upon which the final decision was, in part, based. Here, we are concerned with a recommendation made in the course of the decisional process, and not as a part of any further and additional investigative efforts. In the instant case, the recommendation of the local Staff Judge Advocate was made on the record as theretofore compiled, with no further factual matter being added to the file. We deem the report under consideration in *Gonzales* to be akin to the report and recommendation made in the instant case by the investigating officer, a copy of which was given Cole, and to which he had the opportunity to respond.

■ Nor do we believe that *Crotty* suggests a different result. In *Crotty*, the applicant was not given a copy of the chaplain's report, the psychiatrist's report, or the hearing officer's report, each of which, in the instant case, was furnished Cole and to which he was given opportunity to respond. All of which suggests the inapplicability of *Crotty* to the present case. In sum, then, we conclude, as did the trial court, that there was substantial compliance by the Air Force with its regulations and that there was no violation of due process.

■ The other matter here urged is that there was no basis in fact for the denial by the Air Force of Cole's application for discharge. Our study of the record convinces us that there was. In this general connection we recognize that our scope of review is a very narrow one. Smith v. Laird, 486 F.2d 307 (10th Cir. 1973). The scope of judicial review in a case of this kind has indeed been characterized as being "the narrowest known to the law." Bishop v. United States, 412 F.2d 1064 (9th Cir. 1969). It is not within our province to draw the inferences, nor are we of course permitted to simply substitute our best judgment on the matter for that of the Air Force. At the same time, we have stated that once the applicant makes a prima facie case for classification as a

conscientious objector, the Government must either show some "hard, reliable, provable facts" which would provide a basis for disbelieving applicant's sincerity, or, it must show "something concrete in the record which substantially blurs the picture painted by the applicant." Smith v. Laird, *supra*. With these general principles in mind, let us examine Cole's file.

It is apparent that the basis for the denial of Cole's application was that his claim for conscientious objector status was not founded on deeply and sincerely held beliefs. As indicated, Cole voluntarily enlisted in the Regular Air Force for a four-year period of duty, and, at the time of his enlistment, Cole indicated that he was not a conscientious objector. Cole had been recently married, and certainly one reason for his enlistment was his desire to earn a livelihood. As a condition of his enlistment, Cole requested, and his request was honored, that he be trained as a bomb-navigation systems mechanic and he was accordingly assigned to Lowry Air Force Base for such training. It was Cole's contention that he became a conscientious objector to all war while in the course of such training.

According to Cole, the "incident" that triggered his change of heart was when he realized that he was learning to equip aircraft with conventional weapons, and not just nuclear weapons. In this regard, Cole stated that he had not objected to equipping aircraft with nuclear weapons, because in his own mind he doubted that nuclear bombs would ever be dropped, but that he could not bring himself to placing conventional weapons on aircraft, knowing that such might some day be put in actual use. The Air Force attached significance to this attempted distinction on the part of Cole and felt that it was not truly indicative of an across-the-board objection to war. Certainly such is a permissible inference and, in our view, does tend to "blur" Cole's present declaration that he is now opposed to war in all forms.

Cole's avowed present objection to war is not, as such, religiously motivated, which, of course, it need not necessarily be. Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970), and United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965) But if his objections be not religiously oriented, Cole must then demonstrate that his beliefs are held with the strength of traditional religious convictions. This burden the Air Force held Cole had not met. And in our view the record, and the permissible inferences that may be drawn therefrom, support such conclusion. In this general connection, the Air Force indicated that Cole's avowed present aversion to war was not deeply and sincerely held, but was only transitory in nature, and was more a passing result of his wife's influence, rather than being the result of any fundamental and permanent change in his own thinking. Overall, then, we conclude that the action of the Air Force finds a basis in fact in the record.

Judgment affirmed.