**Captain Roger G. SANGER, Petitioner-Appellant,**

**v.**

**Honorable Robert C. SEAMANS, Jr., Secretary of the Air Force, et al., Respondents-Appellees.**

**No. 73-2333.**

United States Court of Appeals, Ninth Circuit.

Nov. 29, 1974.

Richard P. Fox (argued) of Los Angeles, Cal., for petitioner-appellant.

Huston T. Carlyle, Asst. U. S. Atty. (argued), Los Angeles, Cal., for respondents-appellees.

## OPINION

Before WALLACE and SNEED, Circuit Judges, and EAST,* District Judge.

WALLACE, Circuit Judge:

Captain Sanger applied for a discharge from the United States Air Force Reserve based upon his newly-found conscientious objection to war. The officers who interviewed Sanger concluded that he was sincere. All reviewing officers, none of whom interviewed Sanger, drew a contrary conclusion and the Secretary of the Air Force denied his application for discharge. Captain Sanger then petitioned for habeas corpus in the district court. He appeals from the denial of his petition.

The Secretary stated that his decision was based upon the recommendation of the Air Force Personnel Board. This recommendation, however, was not in Sanger's file and was available neither to him nor to the district court in which he filed his petition for habeas corpus. The absence of this crucial document requires that we reverse and remand.

As the day approached when Sanger was to report for active duty, he ap-

---

* Honorable William G. East, Senior United States District Judge, District of Oregon, sitting by designation.

plied for discharge as a conscientious objector. Pursuant to the appropriate Air Force regulations for processing such claims, Sanger was interviewed by three Air Force officers: a chaplain, a psychiatrist and an investigating officer. 32 C.F.R. §§ 888e.20, 888e.22 (1974). The psychiatrist found him to be free from psychiatric disease, and the chaplain and the investigating officer recommended that his application be granted.

These officers, however, do not make the final decision. The investigating officer forwards the record to his commander who, in turn, forwards the record with his recommendation. Thus it continues at each level of the chain of command, 32 C.F.R. §§ 888e.24, 888e.26 (1974), until the Secretary of the Air Force makes the final decision, 32 C.F.R. § 888e.28 (1974). In this case, each reviewing officer concluded that Sanger was not sincere. The reviewing officers were: the Vice-Commander and Staff Judge Advocate of the Air Reserve Personnel Center, the Deputy Director of Personnel Actions of the Air Reserve Personnel Center, the Command Chaplain of the Air Force Military Personnel Center, the Office of the Surgeon General and the Directorate of Personnel Programs Actions. In a legal review, the Chief, Administrative Law Division, Office of the Judge Advocate General, also recommended disapproval. Thereafter, the Secretary of the Air Force, upon the recommendation of the Air Force Personnel Board, declined to classify Sanger as a conscientious objector or to accept his tender of resignation.

█ The standards for measuring the claims of in-service conscientious objectors are the same as the statutory tests applicable to pre-induction conscientious objectors. Gillette v. United States, 401 U.S. 437, 442, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971); Christensen v. Franklin, 456 F.2d 1277, 1278 (9th Cir. 1972). To qualify as a conscientious objector the applicant must establish: first, that he is conscientiously opposed

to war in any form, Gillette v. United States, 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971); second, that his opposition is based upon "religious training and belief" as this concept has been developed in United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed. 2d 733 (1965), and Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970); and third, that his objection is sincere. Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955). See Clay v. United States, 403 U.S. 698, 700, 91 S.Ct. 2068, 29 L.Ed.2d 810 (1971). The applicant asserts a prima facie claim for such status if he makes nonfrivolous allegations "that, if true, would be sufficient under regulation or statute to warrant granting the requested reclassification . . . ." Mulloy v. United States, 398 U.S. 410, 416, 90 S.Ct. 1766, 1771, 26 L.Ed.2d 362 (1970). If the applicant meets this burden of proof, the burden shifts to the government to demonstrate a basis in fact for denial of the application. Ward v. Volpe, 484 F.2d 1230, 1235 (9th Cir. 1973); Silverthorne v. Laird, 460 F.2d 1175, 1179 (5th Cir. 1972) (dictum). After carefully reviewing the record, we conclude that Sanger did state a prima facie claim.

█ The Secretary denied Sanger's application for failure to satisfy the third requirement of conscientious objector status, implying that expediency rather than sincerity prompted the application. Judicial review of this decision is very narrow. Indeed it has been described as the narrowest review known to law. Bishop v. United States, 412 F. 2d 1064, 1067 (9th Cir. 1969), quoting Blalock v. United States, 247 F.2d 615, 619 (4th Cir. 1957).

██ As we review the Secretary's decision, we must bear in mind that when a person enters into a contractual commitment with the government to serve his country, it is anticipated that he will fulfill his promise. The government has properly recognized, however, that a sincere conversion to principles

dictating a conscientious objection to war may occur after a commitment to military service has been made. The Air Force, like other branches of the service, has set up appropriate procedures to hear such claims. The government not only has an interest in granting discharges to sincere conscientious objectors but also has an equal interest in preventing misuse of these procedures as a backdoor out of military service. Discharge of conscientious objectors from military service is required neither. by the Constitution nor by statute. DeWalt v. Commanding Officer, 476 F.2d 440, 442 (5th Cir. 1973).

■ The procedures established by the Air Force require that the Secretary of the Air Force make the final decision on Sanger's application. The Secretary was not forced to grant Sanger's application because the officers who interviewed Sanger believed him to be sincere. Although we stated in Rastin v. Laird, 445 F.2d 645, 649 (9th Cir. 1971), that investigatory hearings and interviews should be given greater weight than written statements, we did not imply that the Secretary must follow the recommendation of the interviewing officers. Their recommendation is only one of several factors that the Secretary may consider before he makes the final decision. When the sincerity of the applicant is at issue, the Secretary should give serious consideration to the recommendations of the officers who actually interviewed the applicant, but he need not follow those recommendations in every case (as, for example, when there are substantial indications that the officers may have overlooked salient facts).

Nor does Tressan v. Laird, 454 F.2d 761 (9th Cir. 1972), compel the Secretary to grant Sanger's application. There we held that late crystallization of conscientious objector beliefs *alone* is an insufficient ground for denying a discharge, but we did not rule out an adverse decision when there is "some other factor casting doubt on the good

faith of the applicant . . . ." *Id.* at 763 n. 1.

■ Because of procedural irregularity, however, we are unable to affirm the district court in its finding of basis in fact. Although the Air Force is not required to discharge in-service conscientious objectors, once such mechanisms are established they must meet at least the minimal standards of "procedural regularity and basic fair play." Gonzales v. United States, 348 U.S. 407, 412, 75 S.Ct. 409, 412, 99 L.Ed. 467 (1955). When the Air Force establishes regulations, it should follow them. United States ex rel. Brooks v. Clifford, 409 F.2d 700, 706 (4th Cir. 1969).

Air Force regulations require that "[t]he reasons for an adverse decision will be made a part of the record and will be provided to the individual." 32 C.F.R. § 888e.28 (1974). This requirement is dictated by basic considerations of fairness: The in-service applicant should know the reasons for the denial of his application so that he may be able effectively to seek judicial relief. *Cf.* Gonzales v. United States, 348 U.S. 407, 75 S.Ct. 409, 99 L.Ed. 467 (1955). Moreover, the reviewing court must know the reasons for the adverse decision in order adequately to review the Secretary's decision within the narrow scope permitted. United States ex rel. Checkman v. Laird, 469 F.2d 773, 781, 783 (2d Cir. 1972) (dictum).

■ The reasons stated by the Secretary are as follows:

Upon recommendation of the Air Force Personnel Board, the Secretary of the Air Force, on December 14, 1972, declined to classify First Lieutenant Roger G. Sanger, 509–44–9374 FV, as a Conscientious Objector within the meaning of AFR 35–24. The record does not demonstrate that expediency is not the basis of his claim. In addition, he has not satisfied the requirement to demonstrate that his beliefs are sincerely and deeply held.

The Secretary's statement, standing alone, is of little assistance to a review-

ing court. We realize that this Air Force procedure utilizes military officers who cannot be expected to elaborate their decisions with the deftness of a regulatory agency. Therefore, we do not require elaborate findings of fact to accompany the decision. United States v. Willson, 452 F.2d 529, 532 (9th Cir. 1971). But unless the record clearly illuminates the factual basis, we do require from the Secretary's statement at least some direction towards the factual basis. "Judicial review has meaning only when the court has before it a statement of the facts found and the conclusions reached." United States v. Stickler, 452 F.2d 907, 911 (9th Cir. 1971) (dictum). In Thompson v. United States, 474 F.2d 323 (9th Cir. 1973), we endorsed the following practice:

> [T]he board, if it is denying the status claimed because of its belief in the lack of sincerity in the applicant, should state that fact and at least briefly summarize in the record those facts, whether they be inconsistencies in action or written statements, shifty or evasive demeanor, appearance of unreliability, lateness of claim or any other factors reasonably causing the board to reach its conclusion.

*Id.* at 326 n. 14 (dictum), *quoting* United States ex rel. Hemes v. McNulty, 432 F.2d 1182, 1187 (7th Cir. 1970).

Of course, as the court noted in United States v. Stickler, 452 F.2d 907, 911 (9th Cir. 1971), the use of a " 'boilerplate' statement of reasons," as in the present case, does not necessarily invalidate the Secretary's decision. In *Stickler,* the factual reasons for the denial were unambiguously demonstrated in the record. The test is whether the reasons "can be determined from the agency record with reasonable certainty." United States v. Kember, 437 F.2d 534, 536 (9th Cir. 1970), cert. denied, 402 U.S. 923, 91 S.Ct. 1392, 28 L.Ed.2d 662 (1971). *See* United States v. Guaraldi, 468 F.2d 774, 777 (9th Cir. 1972); United States v. Marcovich, 454 F.2d 138, 141–142 (9th Cir.), cert. denied, 409 U.S. 933, 93 S.Ct. 242, 34 L.Ed.2d 188 (1972). In United States ex rel. Checkman v. Laird, 469 F.2d 773, 781 (2d Cir. 1972), the Second Circuit likewise required that the decision be supported by reference to some factual basis but noted that "[w]e will respect the agency's determination as long as we can discern its path."

Here we need not sift through the record to see if we might, to a reasonable certainty, discern the path. The Secretary stated that his decision was based upon the recommendation of the Air Force Personnel Board.[1] That is the path he chose. Certainly it would satisfy all the requirements for judicial review if the Secretary incorporated by reference the reasons stated in this recommendation.[2] If these reasons have

---

1. Air Force Regulation 21–10, dated February 19, 1970, provides:
   3. Functions of the Air Force Personnel Board. This Board reviews individual cases as they involve the application of Air Force personnel policy. . . . Primarily, it:
   a. Reviews and recommends final action on the following:
   (1) A request from an officer to be released from active duty, to resign or to be separated . . . . .

2. For example, if the recommendation of the Air Force Personnel Board outlines reasons similar to those contained in the report of the Office of the Judge Advocate General, we would be better able to review the Secretary's reasons for his decision. That report stated:

   (1) The attempt by Lieutenant Sanger to persuade the Air Force that his C.O. application is supported by his commitment to financially unrewarding research instead of the pursuit of financially lucrative private practice, without mention of the fact that he attempted private practice but was unsuccessful because of a physical disability, raises a substantial question as to the weight to be accorded this argument of Lieutenant Sanger.

   (2) The failure of Lieutenant Sanger, in his numerous conversations and pieces of correspondence with representatives of the Air Force during the period 1 September 1971–19 May 1972, to make any reference to C.O. beliefs, accompanied by his filing of a C.O. application less than three months after receipt of active duty orders,

a basis in fact in the record, the Secretary's decision will be sustained.

We are unable to make such a determination, however, because the Personnel Board's recommendation has not been produced by the government. This missing recommendation might well contain adequate reasons but it just as easily might not. We will neither speculate as to these reasons nor search the record for some other unstated reasons. United States v. Bautista, 497 F.2d 1196, 1198–1199 (9th Cir. 1974); see United States v. Haughton, 413 F.2d 736, 742–743 (9th Cir. 1969).

Sanger urges a broader ground for reversal. The record of an application for a conscientious objector discharge is composed of "[t]he investigating officer's report, along with the individual's application, all interviews with chaplains or doctors, evidence received as a result of the investigating officer's hearing, and any other items submitted by the applicant in support of his case." 32 C.F.R. § 888e.24(f) (1974). The applicant receives a copy of this record and has a right to respond. *Id.* As the record is forwarded to the local staff judge advocate for a legal review and then up the chain of command, a recommendation is attached at each level. 32 C.F.R. § 888e.26 (1974). Before the final decision is made by the Secretary of the Air Force, the regulations require:

> Any *additional information* other than the official service record of the applicant considered by the Secretary of the Air Force or HQ USAF which is adverse to the applicant, and which the applicant has not had an opportunity to comment upon or refute, will be made a part of the record and the

applicant will be given a 15-day opportunity from date of receipt of the additional information to comment upon or refute the material . . . .. 32 C.F.R. § 888e.28 (1974) (emphasis added).

Sanger argues that the recommendations and analyses of the record attached to his file at each level of the chain of command are "additional information" which he has right to comment upon and refute. He argues that the lack of opportunity to respond to the recommendations not only violates Air Force regulations but also violates due process. In support of this argument, he relies upon McGarva v. United States, 406 U.S. 953, 92 S.Ct. 2067, 32 L.Ed.2d 341 (1972); Gonzales v. United States, 348 U.S. 407, 75 S.Ct. 409, 99 L.Ed. 467 (1955); United States v. Droge, 464 F.2d 439 (9th Cir. 1972); Crotty v. Kelly, 443 F.2d 214 (1st Cir. 1971). The government responds that none of the recommendations contain "new information" but that each was based only upon statements contained in Sanger's file, to which he previously has had an opportunity to respond. *See* Cole v. Clements, 494 F.2d 141, 144 (10th Cir. 1974).

While it is apparent that the Secretary would be in a better position to make a final decision if he had before him Sanger's rebuttal to all the recommendations, we need not decide whether this procedure is required either by the due process clause or by Air Force regulations. The recommendation of the Air Force Personnel Board was not included in Sanger's file as required by 32 C.F.R. § 888e.26 (1974). Thus, we do not know whether it contained "adverse information" to which Sanger had a right to

presents a serious question as to the sincerity of those views.

(3) The fact that his C.O. application was filed less than four months after his request to be assigned to Travis AFB was denied, in conjunction with the additional fact that his application for a medical genetics fellowship was granted on 20 March 1972 (which application was made at a

time Lieutenant Sanger knew he had an upcoming military commitment to fulfill and which fellowship conflicted with his military commitment since the fellowship involved full time duties for two years beginning 1 September 1972), raises a significant question as to whether Lieutenant Sanger's C.O. application is based on considerations of personal expediency.

respond pursuant to 32 C.F.R. § 888e.24 (f) (1974). Further, we need not decide whether Sanger's right to review and comment, if any, is satisfied by allowing him to comment during a habeas corpus proceeding.

We reverse and remand to the district court with directions to issue the writ at the expiration of 60 days unless the following conditions are met: first, Sanger is afforded the opportunity to review and comment appropriately upon the recommendation of the Air Force Personnel Board; and second, the Board's recommendation is filed with the district court. Thereafter, the district court should proceed consistently with this opinion.

Reversed and remanded.