Joel C. **WOODS**, Jr., Petitioner–Appellant,

v.

Major General J.J. **SHEEHAN**, U.S. Marine Corps; Thomas Starr, Commanding Officer–Inspector 6th Engineer Support Battalion; Lt. Colonel Swanson, Commanding Officer 6th Engineer Support Battalion, Respondents–Appellees.

No. 91–35695.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 5, 1992.

Decided March 15, 1993.

Roy S. Haber, Eugene, OR, for petitioner-appellant.

Lieutenant Mark D. Lawton, JAGC, U.S. Navy, Alexandria, VA and James L. Sutherland, Asst. U.S. Atty., Eugene, OR, for respondents-appellees.

Before: KILKENNY, TANG, and BRUNETTI, Circuit Judges.

TANG, Circuit Judge:

United States Marine Corps Reserve Corporal Joel Corey Woods, Jr. ("Woods") sought a discharge as a conscientious objector. The Marine Corps Reserve ("Marine Corps") denied Woods' claim of conscientious objector status. Woods thereafter petitioned the district court for habeas corpus relief.[1] The district court dismissed the petition. On appeal, Woods argues he established a prima facie case for conscientious objector status and that the district court erred in finding that the Marine Corps had a basis in fact for denying him conscientious objector status. Woods also argues that he was denied a fair administrative hearing and that the district court erred in failing to examine the entire record. We have jurisdiction under 28 U.S.C. § 1291. We affirm the dismissal of the petition.

## BACKGROUND

On December 9, 1986, Corporal Joel C. Woods, Jr. enlisted in the Selected Marine Corps Reserve for a term of eight years. At the time, he was an eighteen year old high school student, an "A" student who lettered in three sports. Woods successfully completed three months of boot camp, received a Military Occupational Specialty classification as a combat engineer, and was assigned to his unit after completing his training. He satisfactorily completed all required drills which included weapons training, gas chamber training, bridge building, and construction projects. Although Woods states that he was shaken by the emphasis placed on violence, brutality, and force as a necessary part of training for war, he never mentioned this stress to anyone in his chain of command before filing his conscientious objector application. While in the unit, Woods has always been seen to be a Marine of good character. Sergeant Todd W. Butler, his superior non-commissioned officer, stated that he has worked with Woods for over three years, and has always found Woods to be an able Marine of good character who performed his duties efficiently and skillfully. Another superior non-commissioned officer of Woods, Sergeant Steven W. Anderson, stated that he has also served with Woods for over three years and has never known

---

1. "It is well established that a person in the armed forces may, by habeas corpus proceedings, seek judicial review of the denial of his application for discharge as a conscientious objector." *Piland v. Eidson,* 477 F.2d 1148, 1150 (9th Cir.1973) (citation omitted).

Woods to be other than professional and sincere.

On November 28, 1990, two-thirds of Woods' reserve unit was activated in support of Operation Desert Shield. Woods reported to his unit, signed his orders, and applied for conscientious objector status. On December 8, 1990, pursuant to Marine Corps Order ("MCO") 1306.16E(6)(c), Woods was personally interviewed by Battalion Chaplain, B.A. Rumsch. Chaplain Rumsch concluded that Woods' opposition to war is morally based.[2] On December 18, 1990, Clinical Psychologist Larry W. Bailey, Ph.D. interviewed Woods as required by MCO 1306.16E(6)(c). Dr. Bailey opined that Woods appears to be sincere in his application for conscientious objector status.

On December 17, 1990, Captain James P. Gladbach was appointed as the hearing officer to conduct the investigation of Corporal Woods' claim as a conscientious objector. Captain Gladbach held a hearing on December 21, 1990. During the hearing, Woods was given an opportunity to express or present any evidence in support of his application for conscientious objector status. Woods answered Captain Gladbach's questions at that time, submitted a sworn written statement on his behalf, and provided Captain Gladbach with letters/references from certain people. Thereafter, Captain Gladbach then contacted Woods' references and past employers.

On January 4, 1991, Captain Gladbach submitted a written report. The report concluded that Corporal Woods was not sincere and recommended that Woods be denied conscientious objector status. Corporal Woods submitted a rebuttal on January 14, 1991, to Captain Gladbach's conclusions and recommendations. On June 24, 1991, after a lengthy review/recommendation process, Woods' application for conscientious objector status was denied.[3]

Woods thereafter petitioned the district court for habeas corpus relief. The district court found that the Marine Corps had a basis in fact for denying Woods conscientious objector status and denied Woods' habeas petition. Woods timely appeals.

## STANDARD OF REVIEW

We ordinarily review de novo a district court's denial of a habeas corpus petition, while examining for clear error any of its factual determinations. *Thomas v. Brewer*, 923 F.2d 1361, 1364 (9th Cir. 1991). However, in a conscientious objector case in which the applicant has asserted a prima facie claim for relief, the government has the burden of demonstrating a "basis in fact" for its denial of the application. *Koh v. Secretary of the Air Force*, 719 F.2d 1384, 1385 (9th Cir.1983). Because the "basis in fact" test is "the narrowest review known to the law," we review the government's decision with the utmost deference, looking only for "some proof that is incompatible with the applicant's claims." *Id.*

## I.

Under 32 C.F.R. § 75.5 and Marine Corps Order 1306.16E(4)(b), (5), a person seeking conscientious objector status has the initial

---

**2.** This conclusion is consistent with MCO 1306.-16E(5)(c)(1) which states that "[t]he applicant may express the belief that forms the basis for the application on religious, moral, or ethical grounds." Chaplain Rumsch also concluded that there were inconsistencies in Woods' opposition to the taking of life and these inconsistencies speak against conscientious objector status. It is unclear, however, on what grounds these inconsistencies are based.

**3.** Captain Gladbach's report along with Corporal Woods' rebuttal was forwarded to Inspector-Instructor M.R. Lehnert. After reviewing all materials, Lehnert recommended that Corporal Woods' request for conscientious objector status be disapproved. H.H. Dinkins, Commanding General of the 4th Force Service Support Group, and M.T. Cooper, Commanding General of the 4th Marine Division, also recommended disapproval. The entire record was then forwarded to the Commandant of the Marine Corps. The record was reviewed by the Headquarters Marine Corps Conscientious Objector Screening Board ("Board"). The Board found that Corporal Woods' beliefs were neither sincere nor deeply held and recommended disapproval. Major General J.J. Sheehan approved the Board's recommendation, and Wood's application for conscientious objector status was denied.

burden of demonstrating: 1) that he or she is conscientiously opposed to participation in war in any form; 2) the opposition is based on religious training and beliefs; and 3) the person's position is sincere and deeply held. *Accord Taylor v. Claytor,* 601 F.2d 1102, 1103 (9th Cir.1979).

In his application for conscientious objector status, Woods states:

> My belief rests on the nature of war: Warfare is so devastating and complete that the majority of the casualties will be civilian.... In war, there is no difference between combatants and non-combatants, innocent lives will be lost. Therefore, by participating in any conflict, whether it be with Iraq, or any other country, my pulling the trigger on anyone of this opposing nation will be giving sanction to this slaughter. I cannot and will not give this sanction.

> ... War is an act of aggression of one body against another body. The reasons for this conflict are contextual, but what remains the same is the action and its consequences. The ability to kill another human being requires one to regress to the primal instincts of man. Your life is at stake and it is kill or be killed. I abhor this return to mans [sic] prehistoric state, because it does not discriminate against who this person will kill and only in self defense is it justified.

> ....

> ... I firmly believe this to be a consistent example of the depth and sincerity of my claim.

Taking Woods' allegations as true, he has presented a prima facie claim for conscientious objector status under M.C.O. 1306.16E and 32 C.F.R. § 75. He alleged an opposition to participate in war in any form,[4] his opposition is founded on moral grounds with the same strength and depth as found in traditional religious convictions, and those moral beliefs are sincere and deeply held. *See Sanger v. Seamans,* 507 F.2d 814, 816 (9th Cir.1974) (holding that an "applicant asserts a prima facie claim for such status if he makes nonfrivolous allegations 'that, if true, would be sufficient under regulation or statute to warrant granting the requested reclassification....'") (quoting *Mulloy v. United States,* 398 U.S. 410, 416, 90 S.Ct. 1766, 1771, 26 L.Ed.2d 362 (1970)).

The next question, then, is whether the Marine Corps had a basis in fact for denying Woods conscientious objector status. *See Koh,* 719 F.2d at 1385.

## II.

As already noted, to determine whether the Marine Corps has a basis in fact for denying Woods conscientious objector status, we review the Marine Corps' decision with the utmost deference. *Koh,* 719 F.2d at 1385.

Because the "ultimate question in conscientious objector cases is the sincerity of the registrant," *Witmer v. United States,* 348 U.S. 375, 381, 75 S.Ct. 392, 396, 99 L.Ed. 428 (1955), we review the record for "*some* inference of insincerity or bad faith." *Id.* at 382, 75 S.Ct. at 396 (emphasis added). Although the Marine Corps' basis in fact "means more than suspicion and speculation, ... it need not rise to the level of substantial evidence." *United States v. Kember,* 437 F.2d 534, 535 n. 1 (9th Cir.1970) (citations omitted), *cert. denied,* 402 U.S. 923, 91 S.Ct. 1392, 28 L.Ed.2d 662 (1971).

On December 9, 1986, Woods enlisted for eight years in the Selected Marine Corps Reserve. On December 18, 1990, approximately four years later, Woods applied for conscientious objector status after receiv-

---

**4.** The Marine Corps argue that because Woods would kill in self defense, he is not opposed to *war in any form.* Therefore, according to the Marine Corps, Woods' willingness to kill in self defense precludes him from making out a prima facie claim.

We, however, have held that the "willingness to use force to protect the community or to stop another from taking a life is consistent with conscientious objector status." *United States v. Haughton,* 413 F.2d 736, 742 (9th Cir.1969); *see also Hinkle v. United States,* 216 F.2d 8, 10 (9th Cir.1954) (applicant's expressed belief in right to defend self and family did not negative a conscientious objection to participation in war in any form), *cert. denied,* 348 U.S. 970, 75 S.Ct. 529, 99 L.Ed. 755 (1955).

ing and signing his November 28, 1990 activation orders. Although the timing of Woods' application is not by itself a basis in fact for insincerity, "it can be one of the facts which casts doubt on an applicant's sincerity." *Koh*, 719 F.2d at 1386. We have held that "late crystallization of conscientious objector beliefs *alone* is an insufficient ground for denying a discharge, but we did not rule out an adverse decision when there is 'some other factor casting doubt on the good faith of the applicant.'" *Sanger v. Seamans*, 507 F.2d at 817 (internal quotation omitted).

In this instance, there are other factors which cast doubt on Woods' sincerity. As the district court found:

> Reasonable persons could surely find the timing of Woods' application, his voluntary enlistment, his training as a sharpshooter and combat engineer, and the inconsistencies as found by his interviewers to be factors reflecting on the lack of sincerity and depth of his beliefs.

Although we held in *Tressan v. Laird*, 454 F.2d 761 (9th Cir.1972), that voluntary enlistment, weapon training, and filing for objector status after receiving activation orders did not supply the Navy with a basis in fact for denying Tressan's application for conscientious objector status, *id.* at 762–63, the present case is distinguishable.

Here, unlike *Tressan*, the hearing officer who interviewed Woods found that Woods was insincere, and the Marine Corps is justified in giving "serious consideration to the recommendations of the officers who actually interviewed [Woods]." *Sanger*, 507 F.2d at 817. Captain Gladbach, the hearing officer who conducted the investigation of Woods' claim for conscientious objector status, believed that Woods was not sincere and recommended denial of Woods' claim. Captain Gladbach's recommendation was based, among other things, on the alleged fact that Woods disliked the discipline of military life [5] and only filed his application for conscientious objector sta-

tus after receiving his activation orders. Inspector–Instructor M.R. Lehnert noted also that Woods told no one in his chain of command of his opposition to war prior to filing his conscientious objector application.

Each item by itself, *viz.*, the timing of Woods' application, the negative recommendation of his hearing officer, Woods' failure to inform anyone in his chain of command of his reservations, Woods' voluntary enlistment, and his weapon training, when viewed separately, does not constitute a basis in fact. However, taken together, they suggest that Woods' conscientious objection to war is not sincere and deeply held. *See Koh*, 719 F.2d at 1386.

Upon review we find that the Marine Corps had some basis in fact in denying Woods' application for conscientious status, and the district court did not err in denying Woods' petition for habeas corpus relief.

### III.

Woods also argues that he was denied a fair administrative hearing. Our review of the entire record reveals no irregularities or unfairness.

### IV.

Finally, Woods argues that the district court erred in failing to review the entire record. Although the district court limited its review to the administrative record, remand is unnecessary because on appeal we have reviewed de novo the entire record.

AFFIRMED.

---

**5.** In a letter to the Marine Corps, a friend stated, "Corey has done nothing but complain about the military life since he joined, but he felt an obligation to fulfill his contract." In another letter, Corporal Woods' mother stated, "I know he hated all the 'militariness' after awhile and has mostly dreaded the monthly duty."