BOUDIN, Chief Judge,
dissenting.
On its facts, this is a close case. In the first instance the army could probably have turned down Hanna’s application without much risk of reversal; but the administrative proceedings, including the investigating officer’s initial decision, has weakened the army’s position. So the main concern is not with the outcome but with the possible effect of the panel majority’s legal rulings and analysis on future eases.
Hanna joined the army in 1997 under the Health Professional Scholarship Program, which funds an applicant’s medical education in exchange for a commitment to serve in the armed forces. In this process, she expressly averred that she was not a conscientious objector. Hanna completed medical school in 2002 and received a deferral from the army to complete her training in anesthesiology. In October 2005 she received a notice from the army stating that she would be required to report for active duty in August 2006.
In response, Hanna submitted her CO application, describing the development of her pacifist beliefs. They included her religious upbringing in the Coptic Orthodox Church, the rekindling of her beliefs after the death of her father, her viewing war documentaries in the summer of 2005, her attendance at an anti-war rally in September 2005 and her viewing (in early October 2005) a PBS program in which a man cited the Beatitudes in the context of discussing the destructiveness of war.
The army was entitled to be suspicious. The critical question in conscientious objector cases is not whether one dislikes war or prefers not to serve. To qualify for a CO discharge, Hanna had to show, by clear and convincing evidence, that she is conscientiously opposed to participation in war in any form, that her opposition is founded on religious training and beliefs,[9] and that her position is firm, fixed, sincere and deeply held. DOD Instruction 1300.06 ¶ 5.1 (formerly codified at 32 C.F.R. § 75.5(a)); A.R. 600-43 ¶ l-7(c).
Pacifism is not a precept of the Coptic Church; based on Hanna’s own evidence, the development of her position could not easily be described as reflecting rigorous study; and, although the convenient timing is not under army regulations enough to *18 doom her application, the timing could certainly be considered together with other evidence. An army chaplain and an army psychiatrist who initially interviewed Hanna recommended against the granting of her application (although arguably they went beyond their brief).
At the hearing conducted by the appointed investigating officer, several priests and Hanna’s medical colleagues attested to her honesty and sincerity. The investigating officer found that she met the requirements for conscientious objector status. And, officers up the chain of command approved his recommendation (on the papers) until the case reached the final administrative stage: the Department of Army Conscientious Objector Review Board (“the board”), the three-person review panel ultimately responsible for reviewing CO requests.
The board (by a 2-to-l vote) disapproved Hanna’s application. The board president (Colonel Catherine Schoonover) said that Hanna appeared devout but her objections to war lacked passion and sincerity; the chaplain member joined in the denial, relying on the timing of the application and the lack of endorsement of pacifism in Coptic Church doctrine. The board’s staff judge advocate member dissented, saying that Hanna had proved her belief by a preponderance of the evidence (a misstatement of Hanna’s burden of proof).
A habeas proceeding followed (Hanna was already in the army as a captain), and the district court overturned the board, ordering that Hanna be discharged as a conscientious objector but staying the decision pending review here. The panel majority now affirms the district court, pointing to the evidence in support of Hanna’s application and criticizing the decision of the two board members who voted against Hanna.
Judicial review of the board’s decision is intended to be highly deferential. Witmer v. United States, 348 U.S. 375, 380-81, 75 S.Ct. 392, 99 L.Ed. 428 (1955). A court asks whether there is a “basis in fact” supporting the board’s decision that Hanna did not meet the heavy burden of proof she bore, id. at 381, 75 S.Ct. 392; Hager v. Sec’y of the Air Force, 938 F.2d 1449, 1454 (1st Cir.1991). The “basis in fact” standard has been described by Judge Friendly as the most deferential review known to the law in relation to an administrator’s evaluation of evidence. United States v. Corliss, 280 F.2d 808, 810 (2d Cir.), cert. denied, 364 U.S. 884, 81 S.Ct. 167, 5 L.Ed.2d 105 (1960); see also Witmer, 348 U.S. at 380-81, 75 S.Ct. 392.
There was nothing wrong with the board’s concern with the timing of Hanna’s application. The convenience of an applicant’s eve-of-service conversion to pacifism, after an earlier explicit assertion to the contrary, may reinforce doubts.[10] As we said in Lobis v. Sec’y of the Air Force, 519 F.2d 304, 307 (1st Cir.1975), “[t]his court might nonetheless give substantial weight to the element of timing were it reinforced by other evidence.” Any parent whose child claims to be sick on the morning of the final exam knows better than to take such a claim at face value.
Nor has the army misread its own regulations — a matter within its ken, see Bea *19 ver Plant Operations, Inc. v. Herman, 223 F.3d 25, 29 (1st Cir.2000) — by stressing the lack of “rigor and dedication” in relation to Hanna’s formation of pacifist views. The panel majority says that this language only applies if the pacifist views are “secular”; but while Hanna is religious, her pacifist views are not part of her church’s doctrine; they are, assuming her sincerity, part of her own personally conceived moral framework rather than the received tenets of her religion.
In any event, the same requirement of commitment is explicit in the CO regulations that require “a firm, fixed and sincere objection to participation in war in any form” by reason either of “religious training and belief’ or from equivalent non-religious “moral or ethical beliefs ... held with the strength and devotion of traditional religious convictions.” Hanna’s account of her conversion (a few films, a rally, the television program) is not helpful to her claim.
There is one more troubling circumstance. Hanna’s application to the program expressly acknowledged that “I am not a conscientious objector.” Hanna’s 2005 CO application states that at the time she applied to the HPSP program in 1997 she was experiencing religious doubt, but the HPSP application itself evinces no such doubt and instead details her intense involvement with the Coptic Church without any reference to pacifist concerns.
Perhaps the strongest evidence in Hanna’s favor is the fact that the investigating officer heard her testify and credited her sincerity; but aside from the fact that the chaplain and the psychiatrist who interviewed her did not, the responsibility is ultimately that of the board. In administrative review, the administrative law judge’s views may get weight but they are not mechanically controlling even though the ALJ heard the witnesses and the reviewing body did not.[11]
If there is a weakness in the board’s position, it is in the lack of a substantial explanation in a close case. There was evidence on both sides and the consequences for Hanna were very significant; and the board was overturning its own investigating officer with one board member dissenting. So there was perhaps good reason for a fuller explanation. See Rizek v. SEC, 215 F.3d 157, 161 (1st Cir.2000); Sanger v. Seamans, 507 F.2d 814, 818 (9th Cir.1974). Here, however, the panel majority has not sought a better explanation but impermissibly made its own definitive determination.
Waiver rules, adverted to in the panel decision, have no bearing on the matter: if an explanation is insufficient to permit review, it is the court’s job to remand, whether asked to do so or not. See United States ex rel. Coates v. Laird, 494 F.2d 709, 712 (4th Cir.1974). And the idea that remands for further explanation are limited to cases of procedural error has no support in reason or precedent. As we said in an earlier case:
If the agency decision is flawed by mistaken legal premises, unsustainable subsidiary findings, or doubtful reasoning, remanding to the give the agency an *20 opportunity to cure the error is the ordinary course.[12]
Holmes’ famous aphorism notwithstanding, it is far from clear that hard cases make bad law. Often, the problem in a hard case is a tension between existing law and what the judge feels is the “right” result. Here, doctrine gives the close calls to the army. If a judge disregards that doctrine, it is the judge and not the case that has made bad law. This decision, alas, is such an instance.

. The army regulations define "religious training and beliefs” broadly to encompass "a sincere and meaningful belief which occupies in the life of its possessor a place parallel to that filled by the God of another, or, in the case of deeply held moral or ethical beliefs, a belief held with the strength and devotion of traditional religious convictions.” A.R. 600-43, Glossary.

. See Lobis v. Sec’y of the Air Force, 519 F.2d 304, 307 (1st Cir.1975) ("[T]he sudden crystallizing of CO convictions upon receipt of an induction order or call to active duty may legitimately engender suspicion.”); see also Alhassan v. Hagee, 424 F.3d 518, 523 (7th Cir.2005) (“[W]e have found that 'a belated conscientious objector application following assignment is a proper element for consideration.’ " (quoting United. States ex rel. Okerlund v. Laird, 473 F.2d 1286, 1289 (7th Cir.1973))).

. See, e.g., Haas Elec., Inc. v. NLRB, 299 F.3d 23, 28-29 (1st Cir.2002) (noting that where review board disagrees with factual findings of the ALJ, deference is owed to the board, but appellate review is "slightly less deferential than it would be otherwise”); Martinez v. INS, 970 F.2d 973, 974 (1st Cir.1992) (rejecting argument that board must defer to the immigration judge’s findings of fact, and granting appropriate deference to the board's contrary findings); see also Universal Camera Corp. v. NLRB, 340 U.S. 474, 496, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

. Castaneda-Castillo v. Gonzales, 488 F.3d 17, 25 (1st Cir.2007) (en banc); see also Sulaiman v. Gonzales, 429 F.3d 347, 350 (1st Cir.2005) ("On a challenge to the sufficiency of an opinion, the usual remedy is remand. Seavey v. Barnhart, 276 F.3d 1, 12 (1st Cir.2001) ("When an agency has not considered all relevant factors in taking action, or has provided insufficient explanation for its action, the reviewing court ordinarily should remand the case to the agency.”).